[No. A107911. First Dist., Div. Five. Dec. 29, 2005.]

CITY AND COUNTY OF SAN FRANCISCO et al., Plaintiffs and Respondents, v.
JIMMY JEN, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.B. and C.

306

---

COUNSEL

Millstein & Associates and David J. Millstein for Defendant and Appellant.

Dennis J. Herrera, City Attorney, Joanne M. Hoeper, Chief Trial Attorney, Rose-Ellen H. Fairgrieve, Curtis Christy-Cirillo and Jerry Threet, Deputy City Attorneys, for Plaintiffs and Respondents.

Jennifer B. Henning for California State Association of Counties as Amicus Curiae on behalf of Plaintiffs and Respondents.

## OPINION

**JONES, P. J.**—In this case, we must analyze the scope of remedial provisions of the Health and Safety Code available to public agencies charged with enforcing residential building codes. Specifically, we will interpret remedial language contained in Health and Safety Code section 17980.7 broadly so the section can be used to protect a maximum number of residents, reflecting the Legislature's judgment that one of the most important and fundamental duties a city can perform is to protect its residents from unsafe housing conditions.

Appellant also contends the factual foundation for the award of fees is unsupported by substantial evidence, and he asserts procedural errors. We reject these arguments in the unpublished portion of our opinion and affirm the judgment.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant Jimmy Jen is a licensed civil engineer. In June 1999, he purchased a single-family home located on Tucker Avenue in San Francisco. The home was dilapidated and Jen planned to renovate it. However, Jen's prior experiences with the Department of Building Inspection (DBI) led him to believe some department personnel were prejudiced against him. Therefore, Jen misrepresented the character and extent of the work he intended to perform in his request for a building permit. Jen stated the property was owned by Bob McCurn, that he only intended to perform minor dry rot repair around the garage, and that no electrical or plumbing work would be performed. He estimated the cost of the work to be $2,500. In fact, Jen added a two-room extension to the existing structure, added a second floor addition, altered the existing basement to create four habitable rooms, a laundry room and a garage, constructed new decks on the roof and at the basement level, and installed extensive new plumbing and electrical wiring throughout the house.

The DBI learned about the unauthorized renovations and it posted a stop-work notice at the site. Later DBI issued a notice of violation to Jen. Jen ignored both notices and continued construction.

The DBI posted two more stop-work notices at the Tucker Avenue property. In addition, the DBI issued a second notice of violation that ordered Jen to stop working and to obtain the necessary building permits within 30 days. Once again Jen failed to comply.

In February 2000, Jen submitted another application for a building permit. Again, he misrepresented the characteristics of the property and the nature of the work that he had and would perform.

Later that same month, the DBI conducted a public abatement hearing. At the conclusion of the hearing, the DBI issued an abatement order that declared the Tucker Avenue property to be a public nuisance. The order gave Jen 30 days to file revised plans to either remove or legalize all the work that had been performed.

Again, Jen did not comply. He failed to file revised plans within the required 30-day period. When Jen did file revised plans in late April 2000, he again misrepresented the nature of the property and what portions of the structure were newly constructed.

In August 2000, the DBI sent Jen's file to the Planning Department to determine whether the additions to the property could remain. The Planning Department decided that the entire three-story portion of the structure must be demolished and that Jen must obtain a new permit to rebuild it.

In the fall of 2000 the City and County of San Francisco filed the complaint that is at issue in the current appeal.[1] It alleged causes of action for public nuisance, violation of the state housing law (Health & Saf. Code, § 17910 et seq.),[2] failure to comply with an abatement order, and unlawful business practices. (Bus. & Prof. Code, § 17200 et seq.) On November 27, 2000, the court issued a preliminary injunction against Jen.

In December 2000, Jen submitted revised plans to the DBI and the Planning Department and obtained a permit to demolish and then rebuild the rear portion of the Tucker Avenue property. On April 27, 2001, a DBI inspector conducted what was supposed to be the final inspection of the building's foundation and framing. He found that neither the foundation nor framing had been exposed properly to permit inspection.

In January 2003, the suit against Jen came to trial. At the conclusion of the trial, (and after extensive posttrial proceedings that we will discuss in greater

---

[1] Jen has not provided us with a copy of the complaint.

[2] Unless otherwise indicated, all further section references will be to the Health and Safety Code.

detail *post*), the court ruled Jen was liable under all four causes of action that had been alleged. The court ordered Jen to pay a $150,000 civil fine and ruled Jen must pay San Francisco $837,604.05 in attorney fees and costs under section 17980.7.

Jen then filed this appeal challenging the fee award.

## II. *DISCUSSION*[3]

### A. *Statutory Construction*

Jen contends the trial court interpreted section 17980.7 incorrectly when it awarded attorney fees to San Francisco. To put this argument in context, we consider the legislative scheme related to housing code enforcement.

Many aspects of residential building standards in California are governed by the State Housing Law. (See § 17910 et seq.) The law covers a broad array of subjects ranging from requirements for bathroom fixtures (§ 17921.3), to permissible materials for plumbing pipe (§ 17921.7), to standards for garage door springs. (§ 17927.)

More relevant for present purposes, the law includes detailed enforcement provisions that describe how unsafe conditions in residential buildings may be identified and corrected. Specifically, section 17980.6 states: "If any building is maintained in a manner that violates any provisions of this part . . . and the violations are so extensive and of such a nature that the health and safety of residents or the public is substantially endangered, the enforcement agency may issue an order or notice to repair or abate pursuant to this part."

Section 17980.7 describes the penalties that may be imposed on a property owner who fails to comply with a notice to repair or abate issued pursuant to section 17980.6. In particular, section 17980.7, subdivision (d) states, "If the court finds that a building is in a condition which substantially endangers the health and safety of residents pursuant to Section 17980.6, upon the entry of any order or judgment, the court shall do all of the following: [¶] (1) Order the owner to pay all reasonable and actual costs of the enforcement agency including, but not limited to, inspection costs, investigation costs, enforcement costs, attorney fees or costs, and all costs of prosecution."

---

[3] On August 15, 2005, while this appeal was being briefed, San Francisco filed a request asking us to take judicial notice of the legislative history of sections 17980.6 and 17980.7. We deferred ruling on the request until the merits of the appeal. (See *People v. Preslie* (1977) 70 Cal.App.3d 486, 493–494 [138 Cal.Rptr. 828].) Having now considered the unopposed request, we grant it.

The trial court in this case ruled that Jen had failed to maintain his building as required by the State Housing Law, and further, that Jen had failed to comply with a lawful abatement order. In addition, the court ruled that one of the violations proved that Jen's building lacked fire blocks, seriously endangered the residents of the neighborhood in which the building was located: "The lack of fire blocks was injurious to health, interfered with the comfortable enjoyment of property, and was life threatening to a considerable number of persons and the neighborhood. Defendant Jen created a serious fire hazard by not installing fire blocks on the property. Fire blocks prevent the spread of fire from floor to floor. Fire is life threatening and can easily spread from one residence to another. The Tucker Avenue neighborhood had homes that were one residence to another." Accordingly, the court ruled Jen must pay San Francisco $837,604.05 in attorney fees and costs it had incurred pursuing the enforcement action.

Jen now contends the trial court interpreted section 17980.7, subdivision (d) incorrectly. Citing evidence that shows the Tucker Avenue property was never occupied while it was being renovated, Jen contends the section "does not authorize a court to impose attorney fees incurred as the result of abatement efforts against an uninhabited building."

Jen's argument presents an issue of statutory construction that we decide de novo on appeal. (*California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856].) The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. (*In re Marriage of Harris* (2004) 34 Cal.4th 210, 221 [17 Cal.Rptr.3d 842, 96 P.3d 141].) "We begin by examining the statutory language, giving the words their usual and ordinary meaning. [Citation.] If there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs. [Citation.] If, however, the statutory terms are ambiguous, then we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] In such circumstances, we ' "select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." ' [Citation.]" (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 [105 Cal.Rptr.2d 457, 19 P.3d 1196].)

Applying these principles, we conclude the attorney fee award was authorized by section 17980.7.

■ Section 17980.7, subdivision (d) mandates the payment of all reasonable and actual costs of the enforcement agency and costs of prosecution, "If

the court finds that a building is in a condition which substantially endangers the health and safety of residents . . . ." The term "residents" is not defined; however the ordinary definition of the word is "one who resides in a place." (Webster's Collegiate Dict. (10th ed. 2001) p. 993.) Those who live in a building *and* those who live nearby both reside "in a place" that could be "substantially endangere[d]" by unsafe conditions. Therefore, the plain meaning of the statute would seem to authorize an award of fees even if a building is not occupied.

█ This conclusion is supported by other rules of construction. "When a statute omits a provision which another statute embracing a similar subject includes, a different legislative intent for each statute is indicated. [Citations.]" (*In re Khalid H.* (1992) 6 Cal.App.4th 733, 736 [8 Cal.Rptr.2d 414].) Here, another section of the State Housing Law, section 17980, subdivision (a) states an enforcement agency may institute an action to correct or abate an unsafe building on less than 30 days notice if necessary "to prevent or remedy an immediate threat to the health and safety of the public or *occupants of the structure* . . . ." (Italics added.) The phrase we have italicized shows that when the Legislature intends to limit an enforcement action based on how the residents of a particular structure are affected, it knows how to do so. The fact that no limitation is included in section 17980.7, subdivision (d) is strong evidence that no such limitation was intended.

To the extent section 17980.7, subdivision (d) is ambiguous, the conclusion we reach most clearly advances the goals of the State Housing Law. The obvious and stated purpose of section 17980.6 is to protect the health and safety of residents who might be substantially endangered by unsafe building conditions. In an urban area such as San Francisco, where many residences are constructed immediately adjacent to one another, conditions in one building can and do affect the residents of the buildings next door. Construing the section 17980.7, subdivision (d) to permit an award of attorney fees when the residents of a nearby building are endangered fully supports this legislative goal.

Conversely, construing section 17980.7, subdivision (d) so as to permit an award of fees only when a building is inhabited could lead to absurd results. Fee clauses such as the one contained in section 17980.7, subdivision (d) provide a powerful incentive for enforcement agencies to investigate and mitigate unsafe building conditions. In these days of limited budgets, enforcement agencies understandably focus their efforts on actions where they are permitted by statute to recover their fees and costs. If we were to hold that reimbursement of fees and costs is only permitted when a building is inhabited, it is likely that enforcement agencies would shift their efforts to

inhabited structures. However, delaying enforcement efforts until a building is inhabited, rather than as here, pursuing an action while a residence is being built, would only put more people directly at risk. We will not countenance such an absurd result.

■   We conclude the trial court correctly awarded attorney fees costs to San Francisco under section 17980.7, subdivision (d)(1) because the residents of homes near to Jen's building were substantially endangered.

None of the arguments Jen advances convince us a different conclusion is warranted. First, Jen notes that section 17980.6 authorizes an enforcement action when the "health and safety of residents *or the public*" (italics added) is substantially endangered, while section 17980.7, subdivision (d)(1) mandates an award of fees if "the health and safety of residents" is substantially endangered. Jen contends the omission of the words "or the public" from the latter statute was intentional and therefore, he reasons, it would be improper to award fees in this case based on a danger that was posed to "the public." However, we do not hold an award of attorney fees was appropriate because the health and safety of "the public" was substantially endangered. Rather, we conclude fees were appropriate because, as the trial court held, Jen's actions substantially endangered "residents" who lived near his building. Whether danger to "the public" at large would justify an award of fees is an issue we need not decide.

■   Next, Jen contends it would be improper to interpret section 17980.7, subdivision (d) to permit an award of fees based on danger posed to nearby residents because such an interpretation "would result in improper over breadth." We reject this argument because Jen has misconstrued the legal principle upon which his argument relies. The concept of overbreadth deals with statutes that are so broadly written that they punish both constitutionally protected conduct as well as acts that may validly be prohibited. (*People v. Antoine* (1996) 48 Cal.App.4th 489, 495 [56 Cal.Rptr.2d 530]; see also 7 Witkin, Summary of Cal. Law (10th ed. 2005) Constitutional Law, § 498, p. 577.)   ■   Neither section 17980.6 nor section 17980.7 punish conduct that is constitutionally protected.[4] The statutes are not overbroad.

Finally, Jen contends his argument is supported by language in an opinion issued by the Attorney General interpreting Welfare and Institutions Code section 5116. (See 61 Ops.Cal.Atty.Gen. 490 (1978).) However, the language the Attorney General was construing was deleted from the statute more than 25 years ago. (See Stats. 1978, ch. 891, § 5, pp. 2803–2804.) We conclude an

---

[4] Jen does cite one case in support of his argument. However, the citation is flawed and the case does not exist.

Attorney General opinion interpreting a different and long-since amended statute is not persuasive here.

We conclude the trial court properly awarded fees to San Francisco.

B., C.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### III.  *DISPOSITION*

The judgment is affirmed. Because we have concluded San Francisco was entitled to receive its attorney fees and costs in the court below, it follows that San Francisco is entitled to recover its attorney fees and costs on appeal. (*Akins v. Enterprise Rent-A-Car Co.* (2000) 79 Cal.App.4th 1127, 1134 [94 Cal.Rptr.2d 448].) We remand to the trial court so it can set the amount of award.

Stevens, J., and Simons, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 12, 2006, S140976. Werdegar, J., did not participate therein.

---

*See footnote, *ante*, page 305.