**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SYLVIA LANDFIELD TRUST; MARIA
A. LANE; JEFF KERN; RAM GILL;
KHUSHWANT GILL,
*Plaintiffs-Appellants*,

v.

CITY OF LOS ANGELES; ANTONIO
VILLARAIGOSA, Mayor; ROCKARD J.
DELGADILLO, City Attorney,
*Defendants-Appellees*.

No. 11-55904

D.C. No.
2:09-cv-01798-
JST-RZ

OPINION

Appeal from the United States District Court
for the Central District of California
Josephine Staton Tucker, District Judge, Presiding

Submitted February 7, 2013[*]
Pasadena, California

Filed September 9, 2013

Before: Harry Pregerson, William A. Fletcher,
and Jacqueline H. Nguyen, Circuit Judges.

Opinion by Judge Pregerson

---

[*] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

## SUMMARY**

### Civil Rights

The panel affirmed the district court's Fed. R. Civ. P. 12(b)(6) dismissal of plaintiffs' complaint challenging the constitutionality of the City of Los Angeles's Rent Escrow Account Program.

The Los Angeles Rent Escrow Account Program (REAP) is an administrative program codified in the Los Angeles Municipal Code which authorizes the Los Angeles Housing Department to place property into REAP when a landlord fails to repair habitability violations.  Plaintiffs, four landlords whose separate apartment buildings were placed into REAP by the City, alleged that REAP, as applied to them, violated their substantive due process rights.

The panel held that: (1) REAP was rationally related to the legitimate governmental interests of repairing and preventing substandard housing; (2)  REAP did not violate plaintiffs' substantive due process rights; and (3) plaintiffs' procedural challenges failed to support an as-applied substantive due process claim because none of the allegations plausibly suggested that REAP was arbitrarily and unreasonably applied to any of the plaintiffs, or that the placement of plaintiffs' properties into REAP rose to a level that shocked the conscience.

---

** This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Lee Grant, Law Office of Lee Grant, Encino, California, for Plaintiffs-Appellants.

Carmen A. Trutanich, City Attorney, and Claudia McGee Henry, Senior Assistant City Attorney, Los Angeles, California, for Defendants-Appellees.

**OPINION**

PREGERSON, Circuit Judge:

This case involves a constitutional challenge to the defendant City of Los Angeles's ("City") Rent Escrow Account Program ("REAP"). REAP is an administrative program codified in the Los Angeles Municipal Code ("LAMC"). The Los Angeles Housing Department ("Housing Department") places property into REAP when a landlord fails to repair habitability violations. *See* Housing Department Rent Adjustment Commission Regulations ("RACR") § 1200.04. When a property is placed into REAP, tenants pay a reduced rent. RACR §§ 1200.05–.06. The Housing Department determines the amount of the reduced rent based on the severity of the habitability violations. RACR §§ 1200.05–.06. Tenants may choose to pay their reduced rent to either their landlord or an escrow account maintained by the Housing Department. LAMC § 162.07; RACR §§ 1200.05, 1200.13A. If tenants pay into the escrow account, the tenant, landlord, or Housing Department may apply to the escrow account's manager for funds to repair the habitability violations in the tenant's housing. LAMC § 162.07; RACR § 1200.13(B).

Plaintiffs are four landlords whose separate apartment buildings were placed into REAP by the City.  Plaintiffs in their complaint allege that REAP, as applied to them, violated their substantive due process rights.   The district court dismissed plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(6) and denied their motion to amend their second amended complaint.  We affirm.

## Standard of Review

We review de novo the district court's dismissal under Rule 12(b)(6) and review for abuse of discretion the denial of leave to amend. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030–31 (9th Cir. 2008).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## Discussion

## I.  Placing Plaintiffs' Property into REAP Did Not Violate Plaintiffs' Substantive Due Process Rights

To   determine   whether   REAP   violates   plaintiffs' substantive due process rights, we ask whether REAP, as applied to plaintiffs, is "rationally related to a legitimate governmental purpose." *Richardson v. City and Cnty. of Honolulu*, 124 F.3d 1150, 1162 (9th Cir. 1997) (internal quotation marks omitted).  We apply rational basis review because landlords are not a protected class, and they have no

fundamental right to rent uninhabitable housing. *See id.* We affirm the district court's dismissal because plaintiffs failed to state a claim that their constitutional rights were violated.

## A.  Legitimate Goal

Plaintiffs claim that while REAP was originally implemented for legitimate reasons related to public health and safety, its current purpose is illegitimate. To survive plaintiffs' challenge, REAP must have a "reasonable justification in the service of a legitimate governmental objective." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).

The Los Angeles City Counsel enacted REAP out of concern that "large numbers of owners of rental housing are not meeting the City's minimum code requirements." Zev Yaroslavsky, Los Angeles City Council File 87-1084-s2, Oct. 13, 1987 [hereinafter "Yaroslavsky, 1987"].[1]

"[O]ne of the most important and fundamental duties a city can perform is to protect its residents from unsafe housing conditions." *City and Cnty. of San Francisco v. Jen*, 37 Cal. Rptr. 3d 454, 456 (Ct. App. 2005). It is not an easy task for California cities to fulfill this fundamental duty. In 2001, the California legislature found that "one in every eight dwelling units in the state is substandard and that unless health and safety problems are corrected, habitability conditions generally deteriorate until the units become life threatening and uninhabitable and must be removed from the

---

[1]  *Available at* http://cityclerk.lacity.org/lacityclerkconnect/index.cfm?fa=ccfi.viewrecord&cfnumber=87-1084-s2.

housing stock through closure or demolition." Cal. Health & Safety Code § 17998(a).

The crisis of substandard housing is especially severe in Los Angeles.  In 2011, the United States Census Bureau surveyed 1,708,600 renter-occupied units in Los Angeles and Long Beach and found:  449,100 of those units were infested with cockroaches; 35,500 were infested with rats; 46,400 had severe problems with their plumbing, heating, electricity, or upkeep; and 62,300 lacked consistently working toilets.  U.S. Census Bureau, *American Housing Survey for the Los Angeles-Long Beach Metropolitan Area*, 2011.[2]  Indeed, plaintiffs' own buildings had electrical, plumbing, fire safety, and cockroach problems.

California Civil Code § 1941 requires landlords who rent residential property to maintain the property in habitable condition. Cal. Civ. Code § 1941 *et seq.* California state law provides limited remedies to tenants who live in uninhabitable housing.  But as explained below, these remedies are insufficient to ensure that the habitability requirements of § 1941 are met.

California Civil Code § 1942 permits a tenant who lives in substandard housing to make "repairs" needed to render the housing tenantable, and then "deduct the expenses of such repairs from the rent."  Cal. Civ. Code § 1942(a).  The repairs, however, cannot exceed the cost of one month's rent. *Id.* Furthermore, tenants may only employ this remedy twice in any twelve-month period.  *Id.*  "These limitations demonstrate that the [California] Legislature framed [§ 1942]

---

[2] *Available at* http://factfinder2.census.gov/faces/tableservices/jsf/pages/productview.xhtml?pid=AHS_2011_C05ROM&prodType=table.

only to encompass relatively minor dilapidations in leased premises." *Green v. Superior Court*, 517 P.2d 1168, 1177–78 (Cal. 1974).

In addition, California courts developed the doctrine of constructive eviction. *Id.* at 1177. That doctrine allows a tenant to abandon rental housing when the premises become uninhabitable. *Id.* But constructive eviction "gives little help to the typical low income tenant today because to avail himself of the doctrine a tenant must vacate the premises. In the present housing market many tenants cannot find any alternative housing which they can afford, and thus [constructive eviction] has in reality provided little comfort to most needy tenants." *Id*. at 1174, n.10 (internal citations omitted).

In response to a growing crisis of substandard housing, in 1988 the City of Los Angeles enacted REAP. Los Angeles City Council Ordinance 164205, amending LAMC chapter 15.[3] REAP was introduced as part of the City's "more vigorous stand against landlords of rental housing who allow their buildings to deteriorate to the point where tenants are living in substandard conditions." Yaroslavsky, 1987. Between 1989 and 1993, REAP proved "extremely effective in forcing owners of slum dwellings to bring their buildings up to at least minimum standards of habitability." Zev Yaroslavsky, Los Angeles City Council File 93-1850, Sept. 10, 1993.[4]

---

[3] *Available at* http://clkrep.lacity.org/onlinedocs/1987/87-1084-s2_ord_164205.pdf.

[4] *Available at* http://cityclerk.lacity.org/lacityclerkconnect/index.cfm?fa=ccfi.viewrecord&cfnumber=93-1850.

In 1993, an apartment fire in the Pico Union neighborhood of Los Angeles killed ten people. *Id*. The building that burned "was in violation of numerous city fire codes [and] although citations had been issued, the building was never brought up to code." *Id.* In response to the prevalence of "life-threatening fire safety violations," the City Council amended REAP to strengthen the program's enforcement powers. *Id.* (citations and internal quotation marks omitted). REAP continues to enforce fire safety regulations. In 2004, City inspectors cited one of the plaintiff-landlords in this case for "inoperable or missing smoke detectors."

Currently, the City places property into REAP when the landlord fails to correct health, safety, or habitability violations on the rented property. LAMC § 162.03–.04; RACR §§ 1200.01(N), 1200.03–.04. Landlords may challenge the placement of their property into REAP through a hearing and appeals process. LAMC § 162.06; RACR §§ 1200.07–1200.11. Property is released from REAP once it is repaired and passes inspection. LAMC § 162.08; RACR § 1200.14.

By allowing tenants to pay a reduced rent into an escrow account to be used to repair their landlord's uninhabitable property, REAP addresses the health and safety problems created by substandard housing and encourages landlords to prevent those problems. *See* LAMC § 162.07; RACR § 1200.13. These are legitimate goals.

REAP is one of numerous tools that the City employs to enforce its housing code. Other tools include criminal prosecutions and referrals to the State Franchise Tax Board. In the past, the City criminally prosecuted one of the plaintiff-

landlords in this case for owning unpermitted and uninspected units. That prosecution resulted in a fine, probation, and house arrest. Nonetheless, the housing code violations persisted, and the City referred the plaintiff's case to the State Franchise Tax Board. The Tax Board prohibits income tax deductions for interest, taxes, amortization, or depreciation on property that does not comply with the local or state housing code. *See* California Revenue and Taxation Code §§ 17274, 24436.5. Simultaneously, the City placed the plaintiffs' property in REAP. This history demonstrates that REAP works in conjunction with other enforcement programs to combat substandard housing in Los Angeles and to encourage landlords to comply with the housing code. We thus conclude that since its enactment REAP has served, and continues to serve, legitimate governmental goals.

## B. Rationally Related to a Legitimate Governmental Purpose

Governmental action is rationally related to a legitimate goal unless the action is "'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.'" *Lebbos v. Judges of Superior Court, Santa Clara Cnty.*, 883 F.2d 810, 818 (9th Cir. 1989) (quoting *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926)). Plaintiffs contend that the application of REAP to their property bore no rational relationship to a legitimate governmental purpose because (1) their property was improperly designated as substandard, and (2) the City uses REAP to enrich itself and its nonprofit partners. First, plaintiffs' complaint challenges the designation of their property as substandard. REAP established criteria to identify substandard housing. REAP deems a residential unit "untenantable" if it lacks sufficient waterproofing, weather

protection, plumbing, gas facilities, water supply, heating facilities, or electrical lighting.  RACR § 1200.01(N).  REAP also mandates that the building and grounds be free of "debris, filth, rubbish, garbage, rodents and vermin . . . ."  *Id*. Buildings must have garbage receptacles, and landlords must maintain floors, stairways, and railings in good repair.  *Id*. The City places housing in REAP if landlords do not repair tenantability violations, as determined by the Housing Department.  LAMC § 162.03–.04; RACR § 1200.04.

Plaintiffs allege that the City improperly placed property into REAP because of damage that their tenants caused. Plaintiffs, however, do not dispute that their property was in violation of housing codes.  Moreover, the landlord may appeal a decision placing a unit into REAP.  At the hearing, "[t]he landlord may present proof that a rent reduction is not appropriate because the violations were caused by the tenants."  LAMC § 162.06(c)(3).  Thus, REAP protects against landlords being arbitrarily held responsible for tenant-caused damage.

Plaintiffs allege that lack of weatherproofing on the roof of one property did not justify placing the property in REAP. But improper roof weatherproofing is a tenantability violation that REAP seeks to prevent and correct.  Cal. Civ. Code § 1941.1(a)(1) ("A dwelling shall be deemed untenantable . . . if it substantially lacks . . . [e]ffective waterproofing and weather protection of roof and exterior walls . . . ."); LAMC § 162.03.

Plaintiffs allege that the Housing Department improperly retained property in REAP because of construction, including a garage conversion, that was built without required permits. Plaintiffs argue that unapproved housing units are not a

habitability concern.  But rental housing constructed without permits may be a danger to public health and safety because the construction was not checked for code compliance.  Thus, placing property into REAP because of unapproved construction is also rationally related to REAP's goals.

Second, plaintiffs' complaint alleges that the City used REAP to improperly take plaintiffs' property to enrich "the government" and its third-party contractors.  According to the complaint, "the *reason* for REAP is ultimately to transfer private property from individuals to other private entities . . . not to benefit the public . . . but to financially enrich the government-corporate 'partnership' that supports REAP, while depriving individuals of due process *under color of law*."  Plaintiffs' complaint, however, contains no facts to plausibly establish this claim and their bare allegation of wrongdoing is insufficient to withstand a motion to dismiss. *See Iqbal*, 556 U.S. at 678–79.

Further, the City's use of third-party contractors rationally advances REAP's goals.  To better administer REAP, the City partners with four nonprofit organizations: Coalition for Economic Survival, Inner City Law Center, Inquilinos Unidos and Los Angeles Center for Law and Justice. *REAP Outreach*, lahd.lacity.org.[5]  These organizations assist the City Housing Department to "disseminate program information intended to increase voluntary participation of tenants residing in REAP . . . properties."  Los Angeles City

---

[5]  *Available at* http://lahd.lacity.org/lahdinternet/REAPOutreach/tabid/303/language/en-US/Default.aspx.

Council File 06-2432, Nov. 16, 2006;**[6]** *see also* LAMC
§ 155.08.  Further, these nonprofit organizations interview
tenants to ensure that property has been repaired before it is
released from REAP.  Los Angeles City Council File 06-
2432, Nov. 16, 2006.  The Housing Department also contracts
with a property management company that assists landlords
to comply with REAP's requirements.  Los Angeles City
Council File 09-0404-S2, Jan. 14, 2011.**[7]**

   The City's stated purpose for partnering with nonprofit
organizations is to increase tenant participation in REAP
because "withheld rents create additional disincentives for
non-compliant landlords."  Los Angeles City Council File 06-
2432, Nov. 16, 2006.  Given the size of REAP and the
existence of outside agencies with the necessary expertise in
working with tenants, the City's decision to partner with
third-party nonprofit organizations is rational.

   In conclusion, the City's actions are rationally related to
REAP's goals of repairing and preventing substandard
housing and thus the district court's dismissal of plaintiffs'
complaint was proper.

## II. Plaintiffs' Procedural Challenge Cannot Support an As-Applied Substantive Due Process Claim

   Plaintiffs' complaint also alleges that the City violated
plaintiffs' substantive due process rights by placing their

---

   **[6]** *Available at* http://clkrep.lacity.org/onlinedocs/2006/06-2432_ca_11-1-06.pdf.

   **[7]** *Available at* http://clkrep.lacity.org/onlinedocs/2009/09-0404-S2_ca_01-14-11.pdf.

properties into REAP without providing adequate notice of property inspections and/or adequate opportunity to object at a hearing. The district court correctly found that plaintiffs' allegations regarding purportedly deficient REAP procedures cannot support an as-applied substantive due process claim.

"Substantive due process protects individuals from arbitrary deprivation of their liberty by government." *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006) (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845–49 (1998)); *see also Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1026 (9th Cir. 2007) ("An arbitrary deprivation of [rights in real property] may give rise to a viable substantive due process claim in any case in which the Takings Clause does not provide a preclusive cause of action."). To constitute a violation of substantive due process, the alleged deprivation must "shock the conscience and offend the community's sense of fair play and decency." *Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1154 (9th Cir. 2012) (citation and internal quotation marks omitted); *see also Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998). Where, as here, circumstances afford reasonable time for deliberation before acting, we consider conduct to be conscience-shocking if it was taken with deliberate indifference toward a plaintiff's constitutional rights. *Lewis*, 523 U.S. 833 at 846.

Plaintiffs' complaint falls short of this standard. The bulk of its factual allegations pertain to various alleged procedural deficiencies. Specifically, it recounts numerous communications between the City and plaintiffs, claiming that the City failed to afford plaintiffs timely notice of property inspections and hearings before placing their properties into REAP. However, as the district court

correctly noted, these allegations do not amount to an adequately-pled claim for violation of plaintiffs' *substantive* due process rights. None of the allegations plausibly suggest that REAP was arbitrarily and unreasonably applied to any of the plaintiffs, or that the placement of plaintiffs' properties into REAP rose to the level of "that shocks the conscience." *Lewis*, 523 U.S. 833 at 846–49. Accordingly, plaintiffs' complaint fails as a matter of law on this basis as well.

### III.    Denial of Leave to Amend the Complaint Was Not an Abuse of Discretion

Plaintiffs also challenge the district court's denial of leave to amend their second amended complaint. "Denial of leave to amend is not an abuse of discretion where the district court could reasonably conclude that further amendment would be futile." *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1530 (9th Cir. 1995). Here, the district court twice permitted plaintiffs to amend their complaint. The district court reviewed plaintiffs' proposed third amended complaint and found that it did not "allege sufficient facts that amount to more than a 'sheer possibility that [Defendants have] acted unlawfully.'" (quoting *Iqbal*, 556 U.S. at 678) (alteration in original). Because it is clear that the complaint could not be saved by any amendment, the district court did not err in denying plaintiffs leave to amend.

### Conclusion

For the foregoing reasons, REAP is rationally related to a legitimate governmental interest, REAP does not violate

plaintiffs' substantive due process rights, and plaintiffs' procedural challenges fail to support an as-applied substantive due process claim.

**AFFIRMED.**