**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| RICK YOUNG, individually and on behalf of a class and subclass of similarly situated individuals, | No. 12-56189 |
| | D.C. No. 2:12-cv-01788-R-PJW |
| Plaintiff - Appellant, | |
| v. | MEMORANDUM AND ORDER[*] |
| HILTON WORLDWIDE, INC. And HILTON RESERVATIONS WORLDWIDE, LLC, | |
| Defendants - Appellees. | |

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted February 14, 2014
Pasadena, California

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Before: PAEZ and NGUYEN, Circuit Judges, and MOTZ, Senior District Judge.[***]

Rick Young ("Young") challenges the district court's dismissal of his putative class complaint alleging that Hilton Worldwide, Inc. and Hilton Reservations Worldwide, Inc. (collectively "Hilton") violated California Penal Code § 632.7 by recording calls to a customer service telephone line without consent. Reviewing the district court's dismissal de novo, *Sylvia Landfield Trust v. City of Los Angeles*, 729 F.3d 1189, 1191 (9th Cir. 2013), and its denial of leave to amend for abuse of discretion, *id.* at 1196, we reverse and remand.

Young's complaint asserts two claims for relief under Penal Code § 632 and § 632.7, respectively, but he appeals only dismissal of the latter. The former provision generally prohibits eavesdropping and recordation on telephone land lines, whereas the latter generally proscribes eavesdropping and recordation on cellular and cordless telephone lines. In dismissing Young's complaint, the district court simply signed defendants' proposed order, which failed to distinguish between the two provisions, and in fact, did not even make any reference to § 632.7. At the hearing, the parties did not offer oral arguments, and the district court merely entered the order into the record.

---

[***] The Honorable J. Frederick Motz, Senior District Judge for the U.S. District Court for the District of Maryland, sitting by designation.

Because the case was then terminated the district court apparently understood the order as dismissing both claims. By its own terms, however, the order purported to do so on grounds that are applicable to § 632 only—namely, because the complaint failed to allege that the recorded communications were confidential and subject to a reasonable expectation of privacy. The California Supreme Court has unequivocally held that no such requirement applies to § 632.7. *Flanagan v. Flanagan*, 27 Cal. 4th 766, 776 (2002) (explaining that § 632.7's "prohibition applies to all communications, not just confidential communications"). The district court's failure to so recognize was reversible error. *Flanagan* also forecloses Hilton's argument that § 632.7 should be interpreted as including a confidentiality requirement because different standards for § 632 and § 632.7 would lead to absurd results. *Id.*

On appeal, Hilton for the first time urges several statutory construction arguments in an attempt to defend the defective order that its own counsel drafted. These arguments are plainly waived because they were not raised below.[1] *Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037, 1046 n.4 (9th Cir. 2012). Contrary to the dissent's suggestion, in light of the California Supreme Court's decision in

---

[1] We deny Hilton's motion for judicial notice because reliance on the submitted materials is not necessary to dispose of this appeal.

3

*Flanagan*, it is not necessary to remand or to certify any issues to the state Supreme Court.  Hilton brought the motion in question and had every opportunity to litigate whatever issues it so desired.  Whether by design or oversight, it waived the right to assert these issues on appeal by omitting them entirely from the motion to dismiss and the proposed order the court signed.  We therefore decline to address them.

**REVERSED** and **REMANDED.**

*Young v. Hilton Worldwide, Inc.*, No. 12-56189



MOTZ, Senior District Judge, dissenting:

Although the conclusion reached by the majority may be correct, it is in my view premature, so I respectfully dissent. The question the court decides today was not adequately briefed before the district court. Indeed, the district court's order dismissing the complaint made no reference to § 632.7; thus, it is not clear whether the district court considered at all Young's § 632.7 claim or Hilton's limited argument on the issue.[1] I would therefore vacate the district court's order and remand the case to the district court for full briefing and consideration of the question. Before or after the district court renders its decision, the parties, evaluating their respective positions on that question and on the appropriateness of certifying a class action, may settle the case. If not, and an appeal follows, I would certify the question—which involves solely an issue of California law which I believe has not yet been answered fully—to the California Supreme Court pursuant to Cal. Rules of Court, Rule 8.548.[2]

---

[1] Before the district court, Hilton only pressed the narrow argument that § 632.7, like § 632, only prohibits recording a "confidential communication."

1

That said, let me set forth my understanding of this complex statutory scheme to show why I believe it would be better for the district court to consider all of the issues together as opposed to us considering them piecemeal. Prior to the enactment of § 632.7, the California Invasion of Privacy Act ("CIPA") prohibited the recording of confidential communications over a telephone line. *See* § 632. Originally, a specific exception applied "to the use of any instrument, equipment, facility, or service furnished and used pursuant to the tariffs of a public utility." *See* § 632(e)(2). The legislative history of this exception, which was also included in § 632.7, *see* § 632.7(b)(2), shows that its intended effect was to exclude so-called "service-observing" calls from the coverage of CIPA.[3] The California legislature deemed the recording of such calls to be an essential and justifiable business practice in contrast to the "clandestine wiretapping and eavesdropping" targeted by § 632. *See* Letter from Assembly Speaker Jesse Unruh to Governor

[2] I would wait to see if the parties settle the case before certifying the question presented here to the California Supreme Court in part because this action was removed from state to federal court. If the action had remained in state court, the California Supreme Court would not have been required to address the question if the case had been settled.

[3] I recognize that purely as a matter of logic it could be argued that inclusion of the "service-observing" exception in § 632.7 reflects that, contrary to what I say later in this opinion, § 632.7 covers intended recipients of communications over cellular phones because only intended recipients engage in "service-observing." In my judgment, however, more sensibly the inclusion of the "service-observing" exception in § 632.7 should be understood as underscoring that, except for curing the new risks created by cellular technology, what was lawful before the enactment of § 632.7 remained lawful after the enactment of that statute.

Ronald Reagan (July 31, 1967) (Hilton's Request for Judicial Notice ("RJN") Ex. 6 at 21); Digest of Senate Amendments to Assembly Bill No. 860 (1967) (RJN Ex. 9 at 30) (explaining that the June 5 amendment "[m]akes the wiretapping and eavesdropping penalties inapplicable to telephone services regulated by the P.U.C. This will insure that justifiable and regulated use of devices for overhearing employees' business conversations may continue unimpeded. This practice is known as 'service-observing.'"). Deregulation of the telecommunications industry has made the language of the exception outdated: businesses may now purchase telephone recording equipment from persons other than their carriers and use the equipment not pursuant to a tariff. The statutory sections establishing the exception, however, have not been repealed.

By 1992, when § 632.7 was enacted, the technology of the telecommunications industry had dramatically changed. Cellular phones, in contrast to landline phones which were prevalent when § 632 was enacted, had come into common use. The California legislature recognized that one of the inherent risks of cellular phone use was that third parties could gain access to cellular phone calls because these calls utilized the public airwaves. *See* Author Lloyd G. Connelly's Statement of Intent, Assembly Bill No. 2465 (1992) (RJN Ex. 13 at 45) ("AB 2465 recognizes the distinction between traditional, landline telephones and inherently, less secure (or more public) non-traditional cellular and

3

cordless telephones. Most simply, landline telephones employ 'closed' wire-to-wire systems, whereas cellular and cordless telephones employ radio waves."). Recognizing this risk, through the enactment of § 632.7, the California legislature prohibited the recording of cellular phone calls, regardless of whether they were confidential, by "[e]very person who, without the consent of all parties to a communication, intercepts or receives and intentionally records . . . a communication."

Against this background, I am of the view that the recording of a non-confidential call, particularly a "service-observing" call, by an intended recipient of the communication may well not be prohibited by § 632.7.[4]

---

[4] My analysis is based upon the premise that § 632, after the enactment of § 632.7, continues to make unlawful the recording of confidential communications made over cellular phones because they are "carried on . . . by means of a telephone." *See* § 632. In *Flanagan v. Flanagan*, 27 Cal. 4th 766 (2002), the California Supreme Court was at least neutral if not amenable to § 632's continued applicability to cellular phone calls. *See Flanagan*, 27 Cal. 4th at 771 n.2 (noting that the complaint only raised § 632 claims despite some of the calls taking place on a cellular phone and noting that neither party argued that § 632 did not apply to those calls). To the extent that several courts may have indicated, expressly or implicitly, that § 632 applies only to landlines and that only § 632.7 applies when at least one cellular phone is involved, *see, e.g.*, *Hataishi v. First Am. Home Buyers Prot. Corp.*, --- Cal. Rptr. 3d ---, No. B244769, 2014 WL 667381, at *9 n.4 (Cal. Ct. App. Feb. 21, 2014) (published); *Simpson v. Best W. Int'l, Inc.*, No. 3:12-CV-04672-JCS, 2012 WL 5499928, at *8–*9 (N.D. Cal. Nov. 13, 2012) (unpublished), I respectfully disagree with them. In any event, because this case involves "service-observing," Hilton may be entitled to prevail even if § 632 does not apply to communications made over a cellular telephone.

4

The overarching principle of California rules of statutory interpretation is that courts should "strive to ascertain and effectuate the Legislature's intent." *People v. Allegheny Cas. Co.*, 41 Cal. 4th 704, 708–09 (2007) (quotation omitted). Although this is generally achieved simply by following the ordinary meaning of the law's text, *see id.*, "[t]he literal meaning of the words of a statute may be disregarded to avoid absurd results or to give effect to manifest purposes that, in light of the statute's legislative history, appear from its provisions considered as a whole," *see Silver v. Brown*, 63 Cal. 2d 841, 845 (1966). Accordingly, "[w]hen the wording of the statute is ambiguous . . . a court may consider extrinsic evidence of the legislature's intent, 'including the statutory scheme of which the provision is a part, the history and background of the statute, the apparent purpose, and any considerations of constitutionality.'" *Neilson v. Chang* (*In re First T.D. & Inv., Inc.*), 253 F.3d 520, 527 (9th Cir. 2001) (quoting *Hughes v. Bd. of Architectural Exam'rs*, 17 Cal. 4th 763, 776 (1998)).

I find that the word "receive" in § 632.7 is ambiguous. I recognize, of course, that Hilton did in one sense "receive" the communication. However, so would a person who "intercepts" a communication, and yet such a person is separately mentioned in § 632.7. The word "receive" could therefore be limited to third parties who unintentionally receive the communication. Accordingly, I must consider other indicia of the legislature's intent to determine the scope of § 632.7.

The apparent purpose of § 632.7 supports limiting its reach to third parties who unintentionally receive the communication. The advent of cellular technology introduced a risk that did not exist with respect to landlines: that third persons, not parties to the communication, would be able to obtain access to the communication. It was entirely reasonable for the California legislature to address this risk by enacting legislation that prohibited the recording of a conversation overheard, intentionally or inadvertently, by a third person. Here, Hilton was not a third person; it was an intended party to the communication initiated by Young and members of the purported class.

Moreover, CIPA is a criminal statute. It would appear odd, and perhaps unconstitutional, to criminalize conduct on the basis of the type of telephone a *caller* chooses to use.[5] Young has not challenged on appeal the district court's dismissal of his § 632 claim, so the consequence of imposing different standards to § 632 and § 632.7 may not be fully in focus. But interpreting § 632.7 to apply to intended parties to a communication draws a line between criminal and noncriminal conduct not based on any action taken by the person receiving and

---

[5] Presumably, any possible constitutional problem would be cured by reading into § 632.7 a requirement that a defendant know not only that he is recording the contents of a communication but also that the communication is over a cellular phone. But if we believe that such a requirement should be read into § 632.7, we should expressly so state because the knowledge requirement thus imposed might have profound implications upon the structure of this litigation.

recording the call but instead based on a factor entirely unknown to that person—the type of phone the other party to the call is using. Interpreting § 632.7 to apply only when third parties intercept or receive and record a communication avoids this quandary.

Therefore, it appears to me that reading § 632.7 as covering persons who intercept or receive a cellular communication *other than a person who is an intended party to the communication* effectuates the California legislature's intent. Under that reading, it is only persons who record a communication after intercepting or inadvertently receiving it who commit an invasion of privacy.[6]

Most importantly, unlike the majority, I do not believe that the decision of the California Supreme Court in *Flanagan v. Flanagan*, 27 Cal. 4th 766 (2002), is dispositive of all issues related to § 632.7. The majority is completely correct in pointing out that in *Flanagan* the court stated that § 632.7 "applies to all communications, not just confidential communications," *id.* at 771 n.2, and that § 632.7 and related sections "protect against interception or recording of *any* communications . . . rather than protecting only conversations where a party wanted to keep the content secret," *id.* at 776. However, *Flanagan* involved § 632, not § 632.7; the facts presented (involving confidential communications recorded

_____

[6] Such an action is an invasion of the calling parties' privacy whether or not the call involves a "confidential communication," so my interpretation also explains why § 632.7 does not contain an express requirement that there be a "confidential communication."

7

in connection with a domestic dispute) were quite different from those presented here; and the court's holding was limited to the proper definition of the word "confidential" as used in § 632.

I readily acknowledge that even though the court's discussion of § 632.7 in *Flanagan* is probably best characterized as "considered dicta," we are bound to follow it. *See Homedics, Inc. v. Valley Forge Ins. Co.*, 315 F.3d 1135, 1142 (9th Cir. 2003) (quoting *Rocky Mountain Fire & Cas. Co. v. Dairyland Ins. Co..* 452 F.2d 603, 603–04 (9th Cir. 1971). The court in *Flanagan*, however, did not consider the continued vitality of the "service-observing" exception, and the language from *Flanagan* relied on by the majority is in fact consistent with the analysis of § 632.7 that I have articulated here. Perhaps the California Supreme Court was less careful than it should have been in *Flanagan* by not making clear that § 632.7 does not cover recording non-confidential communications, at least communications that fell within the "service-observing" exception, by one of the parties to the communication. If the court did err in that respect, it is entirely understandable given the context of its pronouncements, which did not affect its reasoning in any respect.[7]

---

[7] Lest there be any doubt, I am not at all questioning the soundness of the conclusion reached in *Flanagan* or the quality of the court's reasoning.

8

But in my judgment, by not following the course I suggest, we would be turning a mistake into folly.  The economic consequences at stake are enormous.  Young is seeking $5,000 in statutory damages as to each communication Hilton recorded.  The problems with which courts must deal are complicated, and legal reasoning—not simple appeals to fairness and common sense—is therefore necessary.  However, fairness and common sense lie at the heart of the law and when a conclusion reached by legal exegesis seems contrary to what common sense and fairness suggest the conclusion should be, there is reason for one to pause.[8]

Generally, most of us like to seize and keep control of the ball.  Commendable though that instinct may be, there are times to drop back and punt.  I believe this case is one of those times.

---

[8] I realize that Hilton could have avoided the dilemma in which it finds itself if it had followed what would seem to be the sensible business practice of alerting all of its callers to the fact that their calls were being recorded and obtaining their consent to the recording.  At the same time, if that is what the California legislature wanted businesses to do, they could have enacted simple legislation to that effect.