Filed 6/1/23  City of Costa Mesa v. Enclave Assets CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CITY OF COSTA MESA, | |
| Plaintiff and Respondent, | G061200 |
| v. | (Super. Ct. No. 30-2021-01210115) |
| ENCLAVE ASSETS, LLC et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from an order of the Superior Court of Orange County, Layne H. Melzer, Judge.  Affirmed.

Frank A. Weiser, for Defendants and Appellants.

Jones & Mayer, Amanda A. Pope and Robert L. Wakefield, for Plaintiff and Respondent.

\*          \*          \*

"Sections 17980.6 and 17980.7 of the Health and Safety Code compose a statutory scheme providing certain remedies to address substandard residential housing that is unsafe to occupy.  Pursuant to section 17980.6, an enforcement agency may issue a notice to an owner to repair or abate property conditions that violate state or local building standards and substantially endanger the health and safety of residents or the public.  Section 17980.7 provides that, if the owner fails to comply with the notice despite having been afforded a reasonable opportunity to do so, the enforcement agency may seek judicial appointment of a receiver to assume control over the property and remediate the violations or take other appropriate action."  (*City of Santa Monica v. Gonzalez* (2008) 43 Cal.4th 905, 912, fn. omitted.)[1]  Here, after appellants Enclave Assets, LLC and David Brent Adams failed to timely comply with a Notice to Abate, the City of Costa Mesa (the City) filed a petition seeking an appointment of a receiver pursuant to section 17980.7.  The trial court granted the petition and appointed a receiver.  Appellants challenge the order on numerous grounds, but as discussed below, we conclude they failed to affirmatively establish error.  Accordingly, we affirm.

I

FACTUAL AND PROCEDURAL BACKGROUND

A.  *Receivership Petition*

On July 12, 2021, the City filed a petition seeking an "Order to Abate Substandard Building and Appointment of Receiver" (the Receivership Petition).  The Receivership Petition alleged that following a small fire at the subject property (the property) in April 2019, the City discovered the property had been illegally subdivided and used as an unpermitted sober living facility.  A subsequent City inspection in May 2019 revealed further state law and City Municipal Code violations including, among others, unpermitted kitchen and laundry room additions and two structurally unsound

_____

[1]  All further statutory references are to the Health and Safety Code, unless otherwise stated.

2

balconies. Over the following months, the City received, but rejected, proposed plans for the property because the plans did not address the violations.

On August 31, 2020, the City sought, but was refused, consent to perform an inspection of the property. On March 8, 2021, pursuant to an inspection warrant, City Code Enforcement Officer Winston Kagura inspected the property. Officer Kagura observed that (1) the previously cited violations still existed, and (2) portions of the property had been changed without the required zoning approvals or building permits. Based on the March 2021 inspection, on April 14, 2021, the City issued a Notice to Abate pursuant to section 17980.6. Finally, the petition alleged that in the following months the property's owner has taken no action to remedy the violations or health and safety hazards identified in the Notice to Abate.

The Receivership Petition attached a declaration from Officer Kagura, who is the Code Enforcement Officer assigned to the property. According to Kagura, the permits on file show the property should have two single-family residences. However, Kagura's May 20, 2019 inspection following the fire revealed three kitchens in the front unit. The inspection also revealed two structurally unsound balconies, as well as unpermitted plumbing and electrical work. Following this inspection, Kagura informed Adams that he needed to remove the two kitchens and later sent a Notice of Violations. During July and August of 2019, Adams submitted plans to legalize the additions, but the plans were rejected as inadequate. Subsequently, the COVID-19 pandemic greatly restricted the City's ability to continued code enforcement activities.

On August 31, 2020, Kagura contacted Adams to ask if he could inspect the property to see if any progress had been made to correct the previously noted violations. After Adams refused to grant consent, Kagura obtained an inspection warrant and conducted a full inspection on March 8, 2021. Kagura observed that Adams had failed to abate any of the prior violations. He also noted that new work had been done, including "structural, electrical and plumbing changes all of which is substantially dangerous to any

3

occupants." Based on the violations noted, the City issued a Notice to Abate, which Kagura posted on the property on April 14, 2021. Finally, Kagura stated that as of the date of his declaration (July 12, 2021), no action has been taken to abate any of the violations identified in the Notice to Abate despite having over two months to do so since the issuance of the Notice to Abate and over two years since the City's code enforcement efforts began.

B. *Opposition to Receivership Petition*

On December 3, 2021, appellants opposed the Receivership Petition. They argued the petition was procedurally defective because the City did not provide notice to the occupants of the property as required by section 11573.5. They further argued the petition was "premature and should await proper discovery as to whether evidence gathered by the police [*sic*] violated defendants' Fourth Amendment rights." Appellants also claimed they would suffer irreparable injury if the property was closed and a receiver appointed because the property was their main source of income. Finally, appellants contended that appointment of a receiver was not necessary because they "are willing to correct any alleged code violations if necessary."

In a supporting declaration, respondent Adams stated he is a principal member of Enclave Assets, LLC, and he owns and operates through Enclave the property. The property is a "vital source of income." In April 2019, as a result of a fire on the property, City officials entered without his consent or a court order or a warrant and inspected the property. Subsequently, the City issued administrative citations for code violations. Adams denied any code violations and requested an administrative appeal, which the City has refused to provide. He also requested the filed plan documents regarding the property, but claimed the City informed him that the documents regarding the permitted work on the property prior to Adams's purchase of the property were lost and could not be retrieved. Adams also stated his belief that the May 5, 2021 inspection "was not limited to an administrative inspection of the property but for the

4

purposes of a criminal investigation." Finally, he stated that without waiving any of his objections, "if there are in fact code violations that I am legally responsible for, I can correct them myself under the Court's supervision, and I respectfully request that I be given an opportunity to do so instead of appointing a receiver."

C. *Reply*

In reply, the City argued it was not required to comply with the notice requirements of section 11573.5 because it is not seeking an injunction or temporary restraining order under section 11573, but rather an order to abate and appointment of a receiver pursuant to section 17980 *et seq.* The City asserted it complied with all the required notice under section 17980 *et seq.* The City further argued the constitutionality of the inspection warrant was not relevant to the instant matter, but could be addressed in a separate proceeding. Moreover, the City claimed appellants already had filed a Federal Civil Rights Action based on the inspection and administrative citations, but the action was dismissed for failure to prosecute. The City also argued that it has shown appointment of a receiver is necessary, and "[r]espondents have had every opportunity to present contrary evidence and have failed to do so."

D. *Order Appointing Court Receiver*

On December 16, 2021, the trial court issued a minute order granting the Receivership Petition. The court found the "City has demonstrated that there are significant and ongoing housing and building code violations at the Subject Property, . . . and that these violations pose a serious risk to the health and safety of any occupants and the public. The City has also demonstrated that [respondents] have been afforded a reasonable opportunity to correct the conditions at the Subject Property but ha[ve] failed to do so. The City has been attempting to gain compliance on the Subject Property since at least April 2019. . . . Despite the passage of over two years, [r]espondents have failed to show that even a single correction has been made to the Subject Property." The court

5

was not "persuaded by [r]espondents' assertion that they can [correct] the violations without the appointment of a receiver."

On January 18, 2022, the trial court issued the order appointing a receiver. In the order, the court found that respondents "have been afforded their procedural due process rights guaranteed by the California Constitution and the United States Constitution, including, but not limited to, receipt of the Notices [of Violations] and an adequate and reasonable period of time to comply with those notices, as well as notice and a reasonable opportunity to be heard in connection with the City's petition."

II

DISCUSSION

A. *Standard of Review*

Appellants contend the trial court erred in appointing a receiver over the property. "We review an order appointing a receiver for abuse of discretion. [Citation.] An abuse of discretion is demonstrated if the court's decision was not supported by substantial evidence or the court applied an improper legal standard or otherwise based its determination on an error of law. [Citation.] 'As to factual issues, "we determine whether the record provides substantial evidence supporting the trial court's factual findings. [Citation.] Applying the substantial evidence test on appeal, we may not reweigh the evidence, but consider that evidence in the light most favorable to the trial court, indulging in every reasonable inference in favor of the trial court's findings and resolving all conflicts in its favor. . . . We uphold the trial court's findings unless they so lack evidentiary support that they are unreasonable.""" (*City of Crescent City v. Reddy* (2017) 9 Cal.App.5th 458, 466.)

To the extent appellants' arguments present a matter of statutory construction we apply a de novo review. (*City and County of San Francisco v. Jen* (2005) 135 Cal.App.4th 305, 310.) "The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law.

6

[Citation.]  'We begin by examining the statutory language, giving the words their usual and ordinary meaning.  [Citation.]  If there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs.  [Citation.]  If, however, the statutory terms are ambiguous, then we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history.  [Citation.]  In such circumstances, we "'select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.'"'"  (*Ibid*.)

Finally, "[t]o prevail on appeal, an appellant must establish both error and prejudice from that error.  [Citation.]  In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record.  Rather than scour the record unguided, we may decide that the appellant has forfeited a point urged on appeal when it is not supported by accurate citations to the record.  [Citations.]  Similarly, we may disregard conclusory arguments that are not supported by pertinent legal authority.  [Citations.]"  (*WFG National Title Insurance Company v. Wells Fargo Bank, N.A. as Trustee for Park Place Securities, Inc. Asset-Backed Pass-Through Certificates, Series 2005-WCW2* (2020) 51 Cal.App.5th 881, 894-895.)

B.  *Appellants Have Not Established Error*

Appellants contend the trial court should have denied the Receivership Petition because: (1) the City failed to provide notice to the occupants of the real property pursuant to section 11573.5; (2) the court should have deferred ruling on the petition until there was "proper discovery" as to whether the evidence presented in the petition was gathered in violation of appellants' Fourth Amendment rights; (3) the petition should be denied because appellants would suffer irreparable injury from the closure of the

7

property; and (4) appointment of a receiver was not necessary. We address each argument in turn.

Section 11573.5 provides that a temporary restraining order (TRO) or injunction issued pursuant to section 11573 "may include closure of the premises pending trial when a prior order or injunction does not result in the abatement of the nuisance." (§ 11573.5, subd. (b).) Subdivision (c) of section 11573.5 provides: "In making an order of closure pursuant to this section, the court may order the premises vacated . . . . However, all tenants who may be affected by the order shall be provided reasonable notice and an opportunity to be heard at all hearings regarding the closure request prior to the issuance of any order." Appellants do not provide any case authority holding that the notice to tenants pursuant to section 11573.5 applies to an order appointing a receiver pursuant to section 17980.7. The plain language of section 11573.5 suggests otherwise, as the notice to tenants is directly related to "an order of closure pursuant to this section," i.e., a closure order pursuant to section 11573.5. Thus, appellants have not shown that the notice requirement of section 11573.5 applies to an appointment order under section 17980.7. For the same reason, even if the notice to tenants under section 11573.5 "rise[s] to a federal due process interest," we are not persuaded that the due process interest is implicated here.

Next, appellants suggest that the trial court should have deferred ruling on the Receivership Petition until it determined whether the evidence presented in the petition was gathered in violation of appellants' Fourth Amendment rights. Appellants do not present any case authority that illegally seized evidence cannot be used in a petition requesting appointment of a receiver under section 17980.7. Appellants cite case law finding nuisance abatement actions akin to criminal enforcement actions, and argue that "the exclusionary rule would potentially apply should defendants establish Fourth Amendment violations." However, the federal Court of Appeals for the Ninth Circuit has concluded that the exclusionary rule does not apply to nuisance abatement actions. (See

*Conner v. City of Santa Ana* (9th Cir. 1990) 897 F.2d 1487, 1493 [in a case where inoperative vehicles located on appellants property were found to be a public nuisance and subsequently removed following hearings, the court rejected appellants' argument that "illegally seized evidence—the vehicle identification numbers" of the inoperative vehicles could not be used as evidence in the pre-seizure hearings].) In sum, appellants have not shown that the exclusionary rule would apply to a section 17980.7 receivership petition, even assuming there was evidence of improper entry onto the property.

Appellants next argue that the trial court should have denied the Receivership Petition because it would cause irreparable injury to appellants, depriving them of their main source of income and Adams of his sole occupation. Appellants, however, do not provide any case law holding that irreparable injury is a factor to consider in determining whether a receiver should be appointed pursuant to section 17980.7. Even if irreparable injury is a factor that should be considered, appellants have not shown why that factor is dispositive here. For example, in the context of a TRO and preliminary injunction, irreparable injury may be outweighed by the public interest. (See, e.g., *Winter v. Natural Resources Defense Council, Inc*. (2008) 555 U.S. 7, 23 ["[E]ven if plaintiffs have shown irreparable injury from the Navy's training exercises, any such injury is outweighed by the public interest and the Navy's interest in effective, realistic training of its sailors"].) Thus, even if appellants can show irreparable injury, they have not persuaded us that the court abused its discretion in determining that the strong public interest in protecting occupants and the immediate neighborhood from the safety and health hazards identified in the notices of violations outweighs appellants' economic harm.

Finally, appellants argue appointment of a receiver is not necessary because Adams had "agreed to make corrections to the property, if necessary," if the City provided him with his requested documentation. The trial court was not persuaded by this argument below, and appellants have not shown why the court erred. Indeed, the

9

court's finding that appellants would not correct the code violations and remedy the safety and health hazards is amply supported by the fact that appellants have not abated even one of the violations identified by the City despite the passage of over two years since the first administrative citation was made. In sum, appellants have not shown any error in the court's order appointing a receiver for the property.

## III

### DISPOSITION

The order of the trial court appointing a receiver is affirmed. The Respondent, City of Costa Mesa may recover its costs on appeal.

DELANEY, J.

WE CONCUR:

SANCHEZ, Acting P. J.

MOTOIKE, J.

10