[No. S141483. July 9, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
ALLEGHENY CASUALTY COMPANY, Defendant and Appellant.

## COUNSEL

Karen D. Hill for Defendant and Appellant.

Richard E. Winnie, County Counsel, and William M. Baldwin, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

**GEORGE, C. J.**—Penal Code section 1305, subdivision (a) (section 1305(a)),[1] requires that a forfeiture of bail be declared "in open court." In this case the trial judge ordered forfeiture, but the record does not affirmatively establish whether this declaration did, or did not, occur in open court. We granted review to address in this setting the propriety of a trial court's subsequent order denying the bail surety's motion to set aside the forfeiture and to exonerate the bond.

We conclude as follows: Although the circumstance that a trial court has declared a bail forfeiture is a matter that should be reflected in the court's minutes, and although it is better practice for the minutes further to reflect that such a declaration was made orally in open court, as required by section 1305(a), contrary to the conclusion reached by the Court of Appeal below the statute does not require that a reporter's transcript, or the minutes, reflect the circumstance that the declaration occurred in open court. Moreover, consistent with the well-established presumptions that "official duty has been regularly performed" and that a court (or judge) is "presumed to have acted in the lawful exercise of its jurisdiction" (Evid. Code, §§ 664, 666), in the posture in which this case arises (but contrary to the determination of the appellate court below), a failure to declare forfeiture in open court will not be

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

presumed on a silent record. Because in the present case the party seeking to set aside the forfeiture and exonerate the bond has not established that the trial court failed to declare the forfeiture in open court, we reverse the judgment rendered by the Court of Appeal.

## I

Allegheny Casualty Company (Allegheny) posted a $60,000 bond for the release from custody of criminal defendant Fernando Velente. The court's minutes reflect that on March 21, 2001, Velente failed to appear as ordered at 11:00 a.m. and the trial judge ordered bail forfeited and issued a bench warrant, but the minutes do not affirmatively reflect that the judge declared the forfeiture in open court. There is no reporter's transcript of the March 21 proceedings, apparently because no court reporter was present at the time. Subsequently, Velente still not having been located, the court issued summary judgment against the bond, pursuant to section 1306.

Nearly two years after the summary judgment had become final, Allegheny moved to set it aside, arguing that section 1305(a) requires bail forfeitures to be declared in open court and that, absent a reporter's transcript demonstrating that this occurred, the trial court was without jurisdiction over the bond, and therefore the bond was exonerated as a matter of law. The trial court denied the motion in April 2004, concluding that (1) the statute imposes a declaration-in-open-court requirement, but does not impose a requirement that a reporter's transcript or the minutes reflect that the declaration was made orally in open court; (2) in the absence of a record making clear that the declaration occurred in open court, the presumption is that this is what occurred; (3) the absence of a reporter's transcript of the proceedings does not undermine an otherwise proper declaration of forfeiture made in open court; and (4) in light of a minute order disclosing that the trial court ordered bail forfeited and issued a bench warrant (even though this order did not recite that the declaration itself occurred in open court), the forfeiture of bail should stand.

The Court of Appeal reversed, reasoning that the declaration-in-open-court requirement calls for an express statement of forfeiture by the judge in open court *and also* that a reporter's transcript—or, apparently, at least the minutes—must reflect that the declaration was made orally in open court. The appellate court further concluded that because in this case there is no reporter's transcript of the relevant proceedings, and the minutes do not affirmatively reflect that the trial judge declared the forfeiture in open court,

the bail forfeiture must be vacated and the bond exonerated. For the reasons that follow, we reverse the judgment rendered by the Court of Appeal.

## II

Section 1305(a) provides in relevant part: "A court shall *in open court* declare forfeited the undertaking of bail or the money or property deposited as bail if, without sufficient excuse, a defendant fails to appear" for a scheduled court appearance. (Italics added.)[2] Allegheny, consistent with the conclusion reached by the Court of Appeal below, asserts that this statute imposes the dual requirement that (1) a judge declare forfeiture of bail in open court, and (2) a reporter's transcript reflect that this declaration was made in open court. The People assert the statute imposes only a declaration-in-open-court requirement.

As explained below, we conclude that a declaration of bail forfeiture must be made in open court, and of course the record also should reflect, in the minutes, the circumstance that forfeiture was ordered. (See Gov. Code, § 69844 [minutes reflecting any "order, judgment" or "decree" of the court are to be prepared "forthwith"]; see generally 2 Witkin, Cal. Procedure (4th ed. 1996) Courts, § 373, pp. 444–445.) Although it is better practice for the minutes to reflect further that the declaration of forfeiture was made in open court, section 1305(a) does not require the record to reflect that this occurred in open court.

## A

■ " ' "[A]s with any statute, we strive to ascertain and effectuate the Legislature's intent." ' [Citations.] 'Because statutory language "generally

---

[2] In *People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653 [16 Cal.Rptr.3d 76, 93 P.3d 1020] (*American Contractors Indemnity*), we summarized the relevant procedures: "When a person for whom a bail bond has been posted fails without sufficient excuse to appear as required, the trial court must declare a forfeiture of the bond. (§ 1305(a).) The 185 day[period] after the date the clerk of the court mails a notice of forfeiture (180 days plus five days for mailing) to the appropriate parties is known as the appearance period. (§ 1305, subd. (b).) During this time, the surety on the bond is entitled to move to have the forfeiture vacated and the bond exonerated on certain grounds, such as an appearance in court by the accused. (§ 1305, subd. (c)(1).) The trial court may also toll the appearance period under certain circumstances, or extend the period by no more than 180 days from the date the trial court orders the extension, provided that the surety files its motion before the original 185-day appearance period expires and demonstrates good cause for the extension. (§§ 1305, subds. (e), (i), 1305.4.) [¶] After the appearance period expires, the trial court has 90 days to enter summary judgment on the bond. (§ 1306, subds. (a), (c).) If summary judgment is not entered within the statutory 90-day period, the bond is exonerated. (§ 1306, subd. (c).)" (33 Cal.4th at p. 658, fns. omitted.)

provide[s] the most reliable indicator" of that intent [citations], we turn to the words themselves, giving them their "usual and ordinary meanings" and construing them in context [citation].' [Citation.] If the language contains no ambiguity, we presume the Legislature meant what it said, and the plain meaning of the statute governs. [Citation.] If, however, the statutory language is susceptible of more than one reasonable construction, we can look to legislative history in aid of ascertaining legislative intent. [Citation.]" (*People v. Robles* (2000) 23 Cal.4th 1106, 1111 [99 Cal.Rptr.2d 120, 5 P.3d 176].)

■ The term "open court" typically is understood to refer to nothing more or less than a hearing or trial held in a courtroom from which the public is not excluded. (See generally *NBC Subsidiary (KNBC-TV), Inc. v. Superior Court* (1999) 20 Cal.4th 1178, 1217 [86 Cal.Rptr.2d 778, 980 P.2d 337]; *People v. Valenzuela* (1968) 259 Cal.App.2d 826, 831 [66 Cal.Rptr. 825].) By this common understanding of the term, the statute's requirement that the judge "in open court declare forfeited the undertaking of bail" is fully satisfied by such a statement made orally by the judge in the courtroom, while it is open to members of the public.

As noted, Allegheny insists we should read the statute as imposing an additional requirement that a reporter's transcript (or, apparently, at least the court's minutes) reflect that the declaration was made in open court. The statutory language chosen by the Legislature, however, does not support this construction. Matters or events may occur in open court and yet not be reflected in a reporter's transcript (even assuming a court reporter is present) or in the minutes—some events that occur in open court simply are not recorded by a reporter or memorialized by a court clerk. Likewise, matters may be reflected in a reporter's transcript or in the minutes without transpiring in open court—when, for example, proceedings take place in a session properly closed to the public or held in chambers. We believe that had the Legislature intended to impose, *in addition* to the declaration-in-open-court requirement, a further condition that the record (that is, the minutes and, if available, a reporter's transcript) reflect the circumstance that the declaration occurred in open court, that body would have employed words to such effect, instead of the words set forth in the statute.

### B

Allegheny insists, nevertheless, that section 1305(a) is ambiguous, and that the history of the provision supports the conclusion that the Legislature

intended to require that a bail forfeiture declaration, made by a judge in open court, also be reflected in a reporter's transcript or at least in the minutes. We doubt that the statute is ambiguous but in any event, as explained below, find that the legislative history supports the conclusion we reach and not that urged by Allegheny.

The requirement that forfeiture be declared "in open court" did not exist in the statute until it was revised in 1998. (Stats. 1998, ch. 223, § 2.) Events leading to that change shed light on the evident purpose underlying the amendment.

In *People v. Ranger Ins. Co.* (1993) 19 Cal.App.4th 353 [24 Cal.Rptr.2d 115] (*Ranger*), a surety sought to discharge a bail forfeiture on the ground that its agents had been present in the courtroom and observed that the criminal defendant for whom they had provided bail had failed to appear, but the agents also observed that the judge failed to declare forfeiture in open court. (*Id.,* at pp. 355–356.) The surety argued that the then existing version of section 1305(a) (Stats. 1979, ch. 873, § 10.5, p. 3041) required a trial court to declare forfeiture of bail in open court. The appellate court in *Ranger* disagreed, finding no such requirement in the 1979 version of the statute and concluding instead that simple notation of the forfeiture in the minutes was sufficient. (19 Cal.App.4th at pp. 356–357.)

Section 1305(a) was amended in 1993 (Stats. 1993, ch. 524, § 2, p. 2702), but that change did not add the declaration-in-open-court requirement rejected in *Ranger, supra,* 19 Cal.App.4th 353. Subsequently in *People v. Topa Ins. Co.* (1996) 42 Cal.App.4th 566 [49 Cal.Rptr.2d 506] (*Topa*), the Court of Appeal, reviewing proceedings conducted under the statute as amended in 1993, considered an assertion by a surety that a court was required to declare forfeiture of a bond *on the record.* The court in *Topa* rejected that contention, reasoning: "Nothing in the 1993 amendments remotely suggests the Legislature's rewording of [the statute] was intended to—or in fact did—obligate the trial court to state on the record that bail has been forfeited. *The Legislature certainly knows how to require on-the-record statements by the court. . . . And nothing in [the] current language of [the statute] suggests an on-the-record pronouncement of forfeiture is necessary.*" (*Topa, supra,* 42 Cal.App.4th at p. 568, italics added, citation omitted.)

In early 1998, Assembly Bill No. 2083 (1997–1998 Reg. Sess.), which led to the amendment at issue in the present case, was introduced. The bill did not propose to add a requirement, such as was at issue in the 1996 decision in *Topa, supra,* 42 Cal.App.4th 566, that the record—that is, a reporter's

transcript or the minutes—reflect the court's statement of forfeiture. Instead, the bill addressed the issue that had been before the appellate court in 1993 in *Ranger, supra,* 19 Cal.App.4th 353: it proposed simply to add the words "in open court" to the then current statute, so that it would read, as it does now, "A court shall in open court declare forfeited the undertaking of bail . . . ." (§ 1305(a).)

Committee reports concerning Assembly Bill No. 2083 (1997–1998 Reg. Sess.) were prepared by the Senate Committee on Public Safety and by the Assembly Committee on Public Safety. Both reports noted that, according to the bill's author, under existing law and practice, " '[o]ften the bond is not declared forfeited in open court; rather it is declared forfeited days or weeks later by a clerk of the court. By delaying the declaration, the defendant has an opportunity to flee and avoid apprehension.' " (Sen. Com. on Pub. Safety, Analysis of Assem. Bill No. 2083 (1997–1998 Reg. Sess.) June 23, 1998, p. 5 (Senate Committee Analysis); Assem. Com. on Pub. Safety, Analysis of Assem. Bill No. 2083 (1997–1998 Reg. Sess.) May 5, 1998, p. 3 (Assembly Committee Analysis).) The Senate Committee Analysis described the overall purpose of the bill as " 'intended to make the return of fleeing defendants swifter and easier,' " observing that " '[t]he longer a defendant remains at large, the greater the odds that he or she may commit other crimes, thereby putting the public at risk.' " (Sen. Com. Analysis, *supra,* at p. 3.) The Assembly Committee Analysis explained: "If a defendant fails to appear at a scheduled court appearance, existing law requires that the court order the bail forfeited and the bail agent or surety notified within 30 days. This bill requires that the declaration of forfeiture be made in open court at the time the defendant fails to appear and a bench warrant is issued. This is a minor technical change to existing law and only requires the court to openly order forfeiture of the bail—the rationale being that the bail agent [assuming he or she is present in the courtroom] receives notice of the forfeiture at the time, rather than when the notice is sent and is able to immediately pursue the fugitive." (Assem. Com. Analysis, *supra,* at pp. 2–3.)

The two committee reports addressed opposition to the bill's declaration-in-open-court requirement. The Senate Committee Analysis quoted the following objection made by the Trial Courts' Legislation Committee (an association of county clerks and administrators): " '[C]onsiderable time and effort on the part of bench officers and court staff would be required to perform [the proposed declaration of forfeiture] in open court. Many courts direct the clerk to take roll call of the calendar prior to the judicial officer taking the bench. The bench officer enters forfeiture orders based upon the clerk's information on those failing to appear. Forcing courts to abandon this timesaving measure would be wasteful and inefficient.' " (Sen. Com. Analysis, *supra,* at p. 6.) The two committee reports also observed that the

Judicial Council opposed the bill on the related grounds that bail agents promptly were notified under the existing system, and that requiring each bail forfeiture to be declared in open court would significantly and unnecessarily burden the system. (*Id.*, at pp. 5–6; Assem. Com. Analysis, *supra*, at p. 3.) The Assembly Committee Analysis rejected those criticisms, reasoning: "Despite [the] Judicial Council's objection, [the declaration-in-open-court] requirement places an insignificant burden on the court as it only requires the court to state [in open court,] 'bail is forfeited.' It is a better practice to openly declare the forfeiture (most courts already follow this procedure) . . . ." (Assem. Com. Analysis, *supra*, at p. 3.)

Finally, reviewers of Assembly Bill No. 2083 (1997–1998 Reg. Sess.) criticized the assumption, implicit in the author's comments in support of the legislation, that a declaration-in-open-court requirement generally would allow bail agents to receive notice at the time an oral declaration is made instead of having to wait to review that day's minutes or receive notice by mail from the court clerk. A May 1, 1998, Assembly Republican Bill Analysis commented: "The [author] believes that requiring a court to announce in open court that bail is forfeited will allow them instant notification, thus allowing them to immediately begin the hunt for their client. This argument is true ONLY IF the bail agent is actually sitting in the courtroom. In this counsel's tenure as a prosecutor, it was rare that bail agents attended court proceedings." (Assem. Republican Bill Analysis of Assem. Bill No. 2083 (1997–1998) p. 2, original capitalization.)

Despite the foregoing objections, Assembly Bill No. 2083 (1997–1998 Reg. Sess.) was passed by both houses without amendment, enrolled, and approved by the Governor.

The legislative history does not support Allegheny's assertion that by adding the declaration-in-open-court requirement, the Legislature also intended to impose a requirement that a reporter's transcript, or at least the minutes, reflect that the declaration was made in open court. Indeed, this history suggests the opposite. It demonstrates that the Legislature wished to provide actual and immediate notice of bail forfeiture for the benefit of any surety or bail agent in attendance at the public court session, so that prompt efforts might be undertaken to locate the absent defendant. Although, as noted above, the Assembly Republican Bill Analysis in a report to caucus members cautioned that as a practical matter bail agents often are not present in court and hence will not hear the judge's declaration of forfeiture, such agents—as was the case in *Ranger, supra*, 19 Cal.App.4th 353, 355–357—occasionally are present in the courtroom when bail is forfeited. Indeed Assembly Bill

No. 2083 (1997–1998 Reg. Sess.), as promoted by its author, was premised upon the assumption that in at least some cases bail agents would be present in the courtroom. In the face of these variable circumstances, the Legislature proceeded with the bill as originally written, without specifying a requirement that a reporter's transcript, or the minutes, further reflect that the declaration was made in open court. In so acting the Legislature doubtless was aware that minutes reflecting any court order or decree must be prepared "forthwith" (Gov. Code, § 69844), and hence that body presumably understood that (1) a judge's declaration of forfeiture uttered in open court would trigger a prompt minute order reflecting, at a minimum, the circumstance that bail was forfeited in the particular case, and (2) such a minute order would be available at the end of the day, or at least by the next, to so inform all interested parties.[3] Indeed, as the People observe, in view of the Legislature's apparent objective of enhancing the provision of prompt notice to sureties, an additional condition that a reporter's transcript be prepared to further reflect that the order or decree was made in open court would have been pointless— and might be counterproductive.

As mentioned above, the Assembly Committee Analysis of the bill indicated that the declaration-in-open-court requirement was just that—and nothing more. The amendment was described as "*a minor technical change to existing law*" that "*only requires the court to openly order forfeiture of the bail*" by "*stat[ing] 'bail is forfeited.'* " (Assem. Com. Analysis, *supra*, at pp. 2–3, italics added.) Had the Legislature contemplated a requirement that a reporter's transcript, or the minutes, reflect that the declaration was uttered in open court, it is doubtful the proposed enactment would have been described as it was in the committee's report.[4]

---

[3] As observed in *Ranger, supra,* 19 Cal.App.4th 353, 356–357, the minutes are "no less a part of the record than the transcript of the oral proceedings," and indeed the minutes are generally more accessible than a reporter's transcript. (See also *People v. Surety Ins. Co.* (1973) 34 Cal.App.3d 444, 447 [109 Cal.Rptr. 894] [although "a reporter's transcript may or may not exist and may or may not be available to the surety," the court's "minutes are accessible as a matter of routine"].)

[4] Nor do we read *People v. National Automobile & Casualty Ins. Co.* (2002) 98 Cal.App.4th 277 [119 Cal.Rptr.2d 746] (*National*) to hold otherwise. In that case the appellate court characterized section 1305(a), as amended in 1998, as designed to "ensure[] timely notice by expressly requiring courts to make an unequivocal declaration of bail forfeiture *on the record* the very moment the court concludes the defendant has failed to appear without sufficient excuse." (*National, supra,* 98 Cal.App.4th 277, 284, italics added.) *National,* however, is distinguishable: there was a reporter's transcript of the trial court's forfeiture proceedings, and the transcript revealed affirmatively that the judge failed to declare the forfeiture in open court—the judge instead did so during a recess in the public proceedings, and then directed the clerk to enter a forfeiture in the minutes. (*National, supra,* 98 Cal.App.4th 277, 285.) *National* does not construe the statute as imposing a requirement that a reporter's transcript, or the minutes, reflect that the declaration was made in open court.

██ We conclude, consistent with our reading of the statute's language, that section 1305(a) demands only what it expressly requires—that the declaration be made in open court—and not that a reporter's transcript, or the minutes, further reflect that the declaration occurred in open court.[5]

### III

Nothing in the record before us demonstrates that the trial court made its declaration of forfeiture in open court, but nor is there any indication that the court failed to do so. In this setting, must we affirm the trial court's refusal to discharge the forfeiture of the bail bond and to set aside the summary judgment? Or, as the Court of Appeal concluded, must we, in the face of a silent record, reverse the judgment rendered by the trial court?

### A

Allegheny relies heavily upon those decisions observing that the law disfavors forfeitures in general, and bail forfeitures in particular. (E.g., *National, supra,* 98 Cal.App.4th at p. 287; *County of Los Angeles v. Surety Ins. Co.* (1984) 162 Cal.App.3d 58, 62 [208 Cal.Rptr. 263] *(Surety Ins. Co.)*.) Consistent with this position, Allegheny also notes that bail forfeiture statutes have been strictly construed in favor of the surety in order to avoid the harsh results of a forfeiture. (*Surety Ins. Co., supra,* 162 Cal.App.3d 58, 62 [noting the need to protect "the surety, and more importantly the individual citizens who pledge to the surety their property on behalf of persons seeking release from custody"].) Finally, arguing by analogy to a subset of bail forfeiture decisions addressing the specific and distinct problem arising when a trial court *continues to a later date* a bail forfeiture matter despite a defendant's nonappearance (see *People v. United Bonding Ins. Co.* (1971) 5 Cal.3d 898 [98 Cal.Rptr. 57, 489 P.2d 1385] *(United Bonding); People v. American Bankers Ins. Co.* (1989) 215 Cal.App.3d 1363 [264 Cal.Rptr. 152] *(American Bankers);*

---

[5] Although we conclude that the statute, as amended in 1998, does not impose a requirement that a reporter's transcript, or the minutes, reflect that the declaration was made in open court, nevertheless, as observed above, pursuant to Government Code section 69844 the circumstance that the court declared forfeiture of bail should be reflected in the minutes, as it was here in the minutes of March 21, 2001. Accordingly, when, as required by section 1305(a), a judge makes a declaration of forfeiture in open court, the better practice is for the minutes to reflect that circumstance affirmatively by noting, for example, "forfeiture of bail declared in open court." Of course, if a court reporter is present in the courtroom, these proceedings also eventually may be transcribed, and the court's compliance (or lack of it) with the declaration-in-open-court requirement will be evident on the face of the transcript. We reiterate, however, that section 1305(a) does not require that a court reporter be present or that, if one is present and records the oral proceedings, a transcript of the forfeiture declaration be prepared.

*People v. Frontier Pacific Ins. Co.* (1998) 63 Cal.App.4th 889 [74 Cal.Rptr.2d 316] (*Frontier*)), Allegheny contends that in the face of a record, such as the present one, not affirmatively disclosing that the trial court's declaration of forfeiture was made in open court, (1) we should presume that the declaration was not made in open court, and (2) the People have an obligation to establish that the declaration was made in open court. Any other approach, Allegheny asserts, would place an undue burden on the surety. It follows, Allegheny reasons, that absent an affirmative indication in the record that the declaration was made in open court, any underlying order purporting to forfeit bail is void.[6] As a result, under Allegheny's view, the surety in this case—and in any other similar matter controlled by the 1998 amendment to section 1305(a)—would be entitled to set aside the long-final summary judgment and discharge the forfeiture of the bond, and would be due a refund of thousands of dollars of bond funds long ago paid to the state.

B

As explained below, (1) the general rule is that, faced with a silent record, an appellate court will presume that the trial court performed its duty and acted in the lawful exercise of its jurisdiction; (2) *United Bonding, supra,* 5 Cal.3d 898, and its progeny recognize a narrow exception to this general rule in circumstances in which a defendant fails to appear *and yet the court continues to a later date the matter of bail forfeiture*; (3) in the present case, the court did not continue the matter—and hence the general rule applies here.

■ Evidence Code section 664 provides in relevant part: "It is presumed that official duty has been regularly performed." A similar, albeit more focused presumption is articulated in Evidence Code section 666, which provides that when the act of a court or judge is the subject of "collateral attack," the court (or judge), "acting as such, *is presumed to have acted in the lawful exercise of its jurisdiction.* . . ." (Italics added.) As the People observe, Allegheny's challenge to the long-final judgment at issue in the present case constitutes a collateral attack on that judgment for purposes of section 666.

---

[6] In this regard Allegheny relies upon *People v. Amwest Surety Ins. Co.* (2004) 125 Cal.App.4th 547, 553–554 [22 Cal.Rptr.3d 810] (trial court's failure, reflected in the reporter's transcript, to declare a bail bond forfeiture in open court, caused the trial court to lose jurisdiction over the bond, and the bond thereby was "exonerated by operation of law"), and *National, supra,* 98 Cal.App.4th 277, 287–292 (same). We have no occasion here to determine whether the jurisdictional conclusions reached in those cases are correct.

(See, e.g., *American Contractors Indemnity, supra,* 33 Cal.4th 653, 660–661 [motion to set aside *final* judgment on bail bond constitutes a "collateral attack"]; *County of Los Angeles v. Harco National Ins. Co.* (2006) 144 Cal.App.4th 656, 659–662 [50 Cal.Rptr.3d 573] [same].)[7]

█ Consistent with Evidence Code sections 666 and 664, the general rule was stated by Justice Traynor in *Burge v. City & County of San Francisco* (1953) 41 Cal.2d 608, 612–613 [262 P.2d 6] *(Burge)*: "[W]hen an order or a judgment of a [state] court . . . is collaterally attacked, the only evidence that may be considered in determining whether the order or judgment is void is the record in the proceeding in which it was entered. *If the record is silent as to the existence of a jurisdictional fact, that fact will be presumed.*" (Italics added; see also *Moreno Mut. Irr. Co. v. Beaumont Irr. Dist.* (1949) 94 Cal.App.2d 766, 780 [211 P.2d 928] *(Moreno)* ["[E]very presumption is in favor of the validity of the judgment and any condition of facts consistent with its validity will be presumed to have existed rather than one which will defeat it [citation], and where the record is silent as to what was done it will be presumed in favor of the judgment that what ought to have been done was not only done but rightly done"]; *Ranger, supra,* 19 Cal.App.4th 353, 356 [applying Pen. Code, § 1305 and noting, in dictum: "It is well settled that where the record is silent, the reviewing court does not presume error, but, in most instances, draws the opposite conclusion"].)

These Evidence Code provisions and the rule articulated in the foregoing cases were ignored by the Court of Appeal below and likewise have been essentially ignored by Allegheny in its briefing. Instead, Allegheny relies upon *United Bonding, supra,* 5 Cal.3d 898, and its progeny.

In *United Bonding, supra,* 5 Cal.3d 898, a defendant who was on bail failed to appear, and no explanation was offered suggesting there was any

---

[7] As we explained in *American Contractors Indemnity,* although a collateral attack on a final judgment may be made at any time when the judgment under challenge is *void* because of an absence of "fundamental jurisdiction," a different rule applies when the judgment under challenge is merely *voidable* because it was entered "in excess of jurisdiction." Such voidable judgments "should be challenged directly, for example by motion to vacate the judgment, or on appeal, and are generally not subject to collateral attack once the judgment is final unless 'unusual circumstances are present which prevented an earlier [that is, timely] attack.' " *(American Contractors Indemnity, supra,* 33 Cal.4th at p. 661.) We concluded in *American Contractors Indemnity* that the purported collateral challenge in that case concerned an error that rendered the judgment merely voidable, and hence, in the absence of exceptional circumstances, there was no right to press a collateral attack on the judgment nearly a year after its finality. By contrast, the collateral attack at issue in the present matter is, by Allegheny's reasoning, of the type that may be brought at any time without the need to show exceptional circumstances. In any event, the parties do not contest this point.

excuse for the nonappearance. Nevertheless, the trial court, instead of ordering forfeiture, continued the matter for four months and thereafter finally declared forfeiture of the bail. (*Id.*, at pp. 901–904.) The surety unsuccessfully sought to vacate the forfeiture, and on appeal this court reversed, directing vacation of the forfeiture. After outlining the various statutory procedures designed to protect the surety from default (*id.*, at p. 906), we observed: "If a surety is to be afforded the protections provided by these provisions he must be advised at an early date of the fact of the forfeiture in order that he may institute procedures to locate and compel the appearance of the bailee. Should the surety not have an early opportunity to institute these endeavors the possibility of discharging the forfeiture will be severely prejudiced, and it is manifest that he will suffer such prejudice whether there is an undue delay in advising him after the declaration of a forfeiture or a delay in making the declaration itself." (*Ibid.*)

Observing that "a defendant's failure to appear without explanation is presumptively without sufficient excuse" (*United Bonding, supra,* 5 Cal.3d 898, 907), we concluded that in light of the above described statutory protections designed to allow a surety to act promptly to protect its interests in the event of forfeiture, a trial court's *unwarranted continuance* of a forfeiture matter—that is, a continuance granted in the face of an unexcused nonappearance—"deprives the court of jurisdiction to later declare a forfeiture." (*Id.*, at p. 907.) We then established a special rule for situations in which a trial court continues a bail forfeiture matter in the face of a presumptively unexcused nonappearance. We held that if the record is *silent* concerning the trial court's reasons for continuing the matter and for not immediately declaring forfeiture of bail, a reviewing court must "conclude that [the] nonappearance was without sufficient excuse" and also that the trial court's "right to declare a forfeiture[,] not having been exercised[,] was foreclosed." (*Ibid.*)

Subsequently, the Legislature specifically authorized trial courts to continue a bail forfeiture matter, rather than declare immediate forfeiture, when "the court has reason to believe that sufficient excuse may exist for the failure to appear." (§ 1305.1; see also former § 1305, subd. (b).) In *American Bankers, supra,* 215 Cal.App.3d 1363, the defendant failed to appear, and yet the trial court, without placing any reasons on the record for believing there might be good cause for the nonappearance, continued the matter for more than two weeks and thereafter declared the bail forfeited. (*Id.*, at p. 1365.) Following *United Bonding, supra,* 5 Cal.3d 898, the appellate court in *American Bankers* determined that, in light of the silent record, it was required to

conclude that the trial court's continuance had the effect of foreclosing the subsequent forfeiture. (*American Bankers*, at p. 1370.) Likewise, the appellate court in *Frontier, supra*, 63 Cal.App.4th 889, faced with similar facts—there the trial court continued the matter for two months (*id.*, at pp. 891–892)—concluded the same: a record silent as to the trial court's reasons for believing there may be justification for a defendant's nonappearance will not support the court's continuance of the matter, and on collateral attack a subsequent bail forfeiture will be vacated. (*Id.*, at p. 896.)

The special rule announced in *United Bonding* and applied in its progeny clearly was designed to address a situation we do not face here—the *continuance* of a matter to a later date in the face of a nonappearance by the defendant. In that setting, as we explained in *United Bonding, supra*, 5 Cal.3d 898, a defendant's unjustified nonappearance is presumed to be without sufficient excuse to support a continuance, and in order to avoid leaving the surety in limbo, unable adequately to protect its interests by "institut[ing] procedures to locate and compel the appearance of the bailee" (*id.*, at p. 906), the trial court is obligated to create a record supporting its decision to grant a continuance. If the court fails to make such a record, the continuance—and any bail forfeiture that later is declared—will be invalid.

■ Contrary to Allegheny's view, we perceive no reason to extend *United Bonding*'s special rule beyond the context it was designed to address or to supplant the general rule, articulated in Evidence Code sections 664 and 666, *Burge, supra*, 41 Cal.2d 608, and *Moreno, supra*, 94 Cal.App.2d 766, that a trial court is presumed to have regularly performed its official duty and acted in the lawful exercise of its jurisdiction. When, as here, a trial court does not continue the matter, but instead forfeits bail, the surety is not left in limbo, and there is no need to depart from the normal rule that a silent record will be construed to presume regular performance of duty and to support a court's lawful exercise of jurisdiction.

■ Because nothing in the record suggests the trial judge failed to declare a forfeiture of bail in open court, and because we do not presume a court would fail to perform that statutorily mandated duty, we conclude the trial court properly refused to discharge the forfeiture of the bail bond and to set aside the summary judgment.

## IV

For the reasons set forth above, the judgment rendered by the Court of Appeal is reversed.

Kennard, J., Baxter, J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.