Filed 1/9/24  P. v. Nickerson CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B319196 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LA051175) |
| v. | |
| JAMES DANIEL NICKERSON, JR., | |
| Defendant and Appellant. | |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County.  Michael V. Jesic, Judge.  Affirmed.

Michelle T. LiVecchi-Raufi, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan S. Pithey, Assistant Attorney General, Idan Ivri and Nikhil Cooper, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————

Following a court trial in 2008, appellant James Daniel Nickerson, Jr., was convicted of second degree robbery with a firearm enhancement, among other crimes. The trial court sentenced Nickerson to an aggregate term of 24 years in state prison. On January 11, 2021, the Secretary of the California Department of Corrections and Rehabilitation (CDCR) recommended that the superior court recall Nickerson's sentence and resentence him. The resentencing court declined to recall Nickerson's sentence because it found him to be an unreasonable risk of danger to public safety under Penal Code section 1172.1, subdivision (b)(2).[1] We conclude that the resentencing court did not abuse its discretion in declining to recall the sentence. Accordingly, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND
**1.      Underlying offenses and first appeal[2]**

On November 12, 2005, Christopher Ames met Nickerson to sell him marijuana. During the transaction, Nickerson handed Ames less money than Ames had been expecting, and Ames protested. Nickerson responded to Ames's protests by pulling out a handgun, shooting Ames in the chest, and then clubbing Ames in the head with the weapon, before running away with some of the marijuana. Los Angeles Police Detective Thomas Townsend investigated the shooting. On January 4, 2006, Detective Townsend interviewed Nickerson by phone. Nickerson admitted

---

[1]      All statutory references are to the Penal Code unless otherwise stated.

[2]      We take a portion of the factual and procedural background from this Court's prior opinion. (*People v. Nickerson* (Feb. 19, 2010, B213581) [nonpub. opn.].)

that he had shot Ames, but claimed the gun had discharged accidentally.  Nickerson agreed to see Detective Townsend the next day.

In May 2007, the People filed an information charging Nickerson with the following counts:  count 1, second degree robbery with firearm allegations under section 12022.53, subdivisions (b) [personal use], (c) [discharge], and (d) [discharge causing great bodily injury]; count 2, assault with a firearm (based on the clubbing) with a firearm allegation under section 12022.5 [personal use], and an infliction of great bodily injury allegation under section 12022.7, subdivision (a); count 3, assault with a firearm (based on the shooting) with an infliction of great bodily injury allegation under section 12022.7, subdivision (a); and count 4, possession of a firearm by a felon.

The information additionally alleged that Nickerson was previously convicted of burglary, which qualified as both a strike and as a prior serious felony conviction, and that he had three prior convictions for which he served prison terms.  (§ 667, subds. (b)–(i), § 1170.12, subds. (a)–(d), § 667, subd. (a)(1), § 667.5, subd. (b).)

At a court trial in December 2008, the People presented evidence establishing the facts summarized above.  Nickerson presented no evidence; his trial counsel argued that there was reasonable doubt whether Nickerson had intentionally shot Ames.  On December 19, 2008, the trial court found Nickerson guilty as charged in counts 2, 3, and 4, and found true the ancillary firearm and great bodily injury allegations.  The court found the prior conviction allegations to be true.  The court took count 1 under submission to consider the question whether Nickerson could be guilty of robbery for taking an illegal

3

substance, i.e., marijuana. On December 22, 2008, the trial court found Nickerson guilty of second degree robbery, with firearm findings under section 12022.53, subdivisions (b) [personal use], and (c) [discharge].

On January 14, 2009, the trial court sentenced Nickerson to an aggregate term of 24 years in state prison as follows: on count 1 (robbery), 2 years, doubled to 4 years for the strike, plus 20 years for the firearm enhancement under section 12022.53, subdivision (c); on count 2 (assault with a firearm/clubbing), 10 years concurrent; on count 3 (assault with a firearm/shooting), 7 years concurrent; and on count 4 (possession of a firearm by a felon), 2 years 8 months concurrent.

In 2010, this Court affirmed the judgment of conviction and modified the sentence by staying the terms imposed on counts 2 and 3. (*People v. Nickerson*, *supra*, B213581.) We further awarded Nickerson five additional days of custody credit. (*Ibid*.)

**2.    Resentencing proceedings**

On January 11, 2021, the Secretary of the CDCR recommended that the trial court recall Nickerson's sentence and resentence him under former section 1170, subdivision (d)(1), since renumbered as section 1172.1. The Secretary's letter asked the trial court to consider amendments to section 12022.53 that took effect on January 1, 2018. Prior to the amendments, a sentencing court was required to impose enhancements for personal firearm use in the commission of enumerated felonies. (*People v. Morrison* (2019) 34 Cal.App.5th 217, 221.) Now courts have discretion to strike or dismiss a personal use firearm enhancement at sentencing or resentencing in the interest of justice. (§ 12022.53, subd. (h).)

The Secretary detailed Nickerson's commitment offense and his criminal history.  Nickerson had three juvenile offenses: two convictions for burglary under section 459 and one for grand theft under section 487.1.  Nickerson also had six adult convictions:  (1) June 8, 1983, receiving stolen property under section 496; (2) December 2, 1985, first degree burglary under section 459; (3) April 26, 1988, possession of a narcotic controlled substance for sale under Health & Safety Code section 11351; (4) September 26, 1989, possession of a narcotic controlled substance under Health & Safety Code section 11350, subdivision (a); (5) July 28, 1990, possession or purchase of cocaine base for sale under Health & Safety Code section 11351.5; and (6) September 8, 2000, felon or addict in possession of a firearm under section 12021, subdivision (a).  The case summary noted that Nickerson violated parole three times.

The case summary also included Nickerson's 11 rule violations in custody.  The two most recent violations were on January 25, 2019, for fermenting or distilling materials in a manner consistent with alcohol production and for fighting on August 25, 2017.

Nickerson had nine written counselings during his incarceration.  The two most recent ones were in 2019 for being absent from a work assignment and disobeying an order.

The Secretary's letter also detailed Nickerson's work and education progress reports.  Nickerson's "mental health status is listed as Enhanced Outpatient Level of Care.  Nickerson's developmental disability status is listed as DD2-Usually needs reminders & assistance with daily functions."

Nickerson's retained counsel then filed a motion urging the court to recall and resentence him.  Nickerson argued that his

sentence should be recalled because he "possesses broad community support, positive education progress, and a strong dedication to overcoming his mental health issues." The motion stated that "Nickerson was born with cognitive issues but has always been committed to his mental health appointments even while incarcerated." Nickerson attached letters of support from family members and friends.

On January 22, 2022, the resentencing court, different from the original trial court, held a hearing on the motion. Nickerson's counsel read into the record the trial court's statement at the original sentencing hearing after it denied Nickerson's motion under *People v. Superior Court* (1996) 13 Cal.4th 497 (*Romero*) to dismiss a prior strike conviction if doing so would serve the interest of justice. "Let me state I feel that my hands were bound by the law. But if there is any way that the appellate court finds that I've abused my discretion in denying the *Romero* motion, I will certainly welcome it. . . . Oh, I also want to state that he was borderline—his IQ is very low, and so he was borderline as to the specific intent in this court's opinion."

Nickerson's counsel then argued to the resentencing court that Nickerson's IQ was so low that he could not have premeditated the attempted murder. The resentencing court later corrected Nickerson's counsel that Nickerson was convicted of robbery with a firearm enhancement.

The resentencing court declined to recall Nickerson's sentence because it concluded that Nickerson would pose an unreasonable risk of danger to public safety. The court stated its reasons on the record:

"Just to be clear about the facts of the case, he shot someone in the chest. And I've got to say, I'm a little surprised

that the enhancement that he was sentenced on wasn't the 12022.53(d), which is the 25-to-life enhancement for discharging a firearm in the commission of robbery causing great bodily injury because it's clear that the jury found that there was great bodily injury as to the other counts he was convicted on including the assaults where those counts were run concurrent. So I'm looking at the severity of offense was extreme. It's a miracle that the victim didn't die being shot in the chest.

"If you look at his history, his juvenile history has from '79 to '82, 3 separate offenses, theft offenses for burglary and grand theft. Starting in '83 when he became an adult it's every year or 2 he's convicted of another offense, including first degree residential burglary. And then we have this case. In terms of how well he's done in the prison, there's numerous rule violations. Nothing horribly serious. There's some for fighting but nothing serious. But based on the conduct in his history and on the actual facts of this case I do find that he's an unreasonable risk to safety to the public if he's released. I am making that finding.

"But I want to point out that if I were to recall the sentence and resentence him I wouldn't give him less than the 24 years. I'd give him the 24 years, so it wouldn't make a difference. So the motion is denied at this time."

Nickerson timely appealed.

## DISCUSSION

I.  **The trial court did not abuse its discretion when it refused to recall Nickerson's sentence**

    A.  **Governing law**

"Prior to January 1, 2022, section 1170, former subdivision (d)(1) . . . 'authorize[d] the Secretary of the CDCR to recommend

7

to the superior court that the court recall a previously imposed sentence and resentence the defendant.  [Citation.]  The CDCR recommendation furnishe[d] the court with jurisdiction it would not otherwise have to recall and resentence and [was] "an invitation to the court to exercise its equitable jurisdiction." ' " (*People v. Braggs* (2022) 85 Cal.App.5th 809, 817, fn. omitted (*Braggs*).)

Effective January 1, 2022, the California Legislature " 'moved the recall and resentencing provisions of former section 1170(d)(1) to new section 1170.03.' " (*Braggs, supra*, 85 Cal.App.5th at p. 817.)  " '[T]he Legislature repeatedly indicated that Assembly Bill 1540 was intended to "make clarifying changes" to former section 1170(d)(1), including specifying the required procedure and guidelines when the CDCR recommends recall and resentencing.' " (*Id.* at pp. 817–818.)

"Effective June 30, 2022, '[t]he Legislature . . . renumbered section 1170.03 to section 1172.1, but made no substantive changes.' " (*Braggs, supra*, 85 Cal.App.5th at p. 818.)  Section 1172.1 provides that a trial court may recall and resentence a defendant at any time upon the recommendation of the Secretary or other specified public official.  (§ 1172.1, subd. (a)(1).)

Section 1172.1 also provides that if the "resentencing request . . . is from the Secretary of the Department of Corrections and Rehabilitation," then "[t]here shall be a presumption favoring recall and resentencing of the defendant, which may only be overcome if a court finds the defendant currently poses an unreasonable risk of danger to public safety, as defined in subdivision (c) of Section 1170.18." (§ 1172.1, subd. (b)(2).)

8

Subdivision (c) of section 1170.18, in turn, provides that an " 'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667." (§ 1170.18, subd. (c).)

The violent felonies listed in section 667, subdivision (e), are known as "super strikes" (*People v. Jefferson* (2016) 1 Cal.App.5th 235, 242) and consist of the following crimes: (1) sexually violent offenses; (2) oral copulation with a child; (3) a lewd or lascivious act involving a child; (4) any homicide offense, including attempted homicide; (5) solicitation to commit murder; (6) assault with a machinegun on a peace officer or firefighter; (7) possession of a weapon of mass destruction; and (8) any serious or violent felony offense punishable by life imprisonment or death. (§ 667, subd. (e)(2)(C)(iv).)

Section 1172.1, subdivision (a)(5), sets forth a list of permissive and mandatory factors for the court to consider when determining whether to recall and resentence. The court may consider "postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice." (§ 1172.1, subd. (a)(5).)

The court shall consider "if the defendant has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence, if the

defendant was a victim of intimate partner violence or human trafficking prior to or at the time of the commission of the offense, or if the defendant is a youth or was a youth as defined under subdivision (b) of Section 1016.7 at the time of the commission of the offense, and whether those circumstances were a contributing factor in the commission of the offense."  (§ 1172.1, subd. (a)(5).)

"Where, as here, the CDCR recommends recall and resentencing, the court is also now required to hold a hearing (unless the parties otherwise stipulate), state on the record its reasons for its decision, provide notice to the defendant, and appoint counsel for the defendant." (*People v. McMurray* (2022) 76 Cal.App.5th 1035, 1040; accord § 1172.1, subds. (a)(7)–(8), (b)(1).)  Furthermore, when recalling and resentencing under these provisions, the court "shall . . . apply any changes in law that reduce sentences or provide for judicial discretion." (§ 1172.1, subd. (a)(2); *People v. Pierce* (2023) 88 Cal.App.5th 1074, 1078.)

We review a court's resentencing determination for abuse of discretion.  (*People v. Frazier* (2020) 55 Cal.App.5th 858, 863.) " 'In reviewing for abuse of discretion, we are guided by two fundamental precepts.  First, " '[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary.  [Citation.]  In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.' "  [Citations.]  Second, a " 'decision will not be reversed merely because reasonable people might disagree.  "An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge." ' "

[Citation.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it.' " (*People v. Strother* (2021) 72 Cal.App.5th 563, 571.)

### B.    Analysis

The presumption in favor of recall can be overcome only by a finding that the defendant poses an unreasonable risk to public safety, as defined in section 1170.18, subdivision (c). Nickerson argues that the resentencing court abused its discretion because nothing in the record supports a finding that he is an unreasonable risk of danger to public safety if released. (§ 1172.1, subd. (b)(2).) We disagree.

Nickerson's first appeal and the Secretary's letter establish that Nickerson brought a handgun to a drug deal and shot Ames in the chest after a struggle. Nickerson also clubbed Ames on the head with the handgun. The resentencing court considered these facts, as well as Nickerson's criminal record. The resentencing court observed that Nickerson was a recidivist because Nickerson had been convicted for a new offense "every year or 2 . . . including first degree residential burglary." Nickerson acknowledges that his prior strike conviction for burglary "was a serious offense." The resentencing court also expressed that "it's a miracle that the victim didn't die being shot in the chest." The court further observed that Nickerson had several rule violations in prison. Based on the foregoing, the resentencing court concluded that Nickerson was an unreasonable risk of danger to public safety. While the court did not explicitly state that there was an unreasonable risk that Nickerson would commit murder or attempted murder under section 667, subdivision (e), it made this implied finding given the nature of

11

the commitment offense. It was not arbitrary or capricious for the court to conclude Nickerson's recidivist history culminated in a violent offense where he shot someone. Thus, the trial court did not err in concluding that there was an unreasonable risk that Nickerson might again engage in similar conduct.

Nickerson attempts to relitigate the underlying facts of his conviction by claiming that he did not have the requisite intent to discharge the firearm. Section 12022.53, subdivision (c), requires the prosecution to prove beyond a reasonable doubt that a defendant personally and intentionally discharged a firearm during the commission of a specified felony. (*People v. Anderson* (2020) 9 Cal.5th 946, 953.) Nickerson points to the victim Ames's testimony that the firearm discharged when Nickerson and Ames were scuffling. Nickerson also points to the investigating detective's testimony saying the same. However, Nickerson did not present the resentencing court with this testimony or argue that Nickerson lacked the requisite intent. Nor did Nickerson object to the resentencing court's summary of the facts. Our Supreme Court has held that failure to object forfeits "claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices." (*People v. Scott* (1994) 9 Cal.4th 331, 353 (*Scott*).) As such, the argument on appeal is forfeited. Even if we considered this argument, testimony that the firearm discharged during a scuffle is not evidence that Nickerson did not intend to discharge the firearm. At Nickerson's trial, the trial court found true the firearm enhancement under section 12022.53, subdivision (c), which required a finding that Nickerson personally and intentionally discharged a firearm. We then affirmed the judgment on appeal.

12

Nickerson further argues that the resentencing court failed to consider his rehabilitative efforts, as well as his mental health and intellectual deficits under section 1172.1, subdivision (a)(5). The resentencing court had Nickerson's motion containing his education progress and letters of support. Nickerson claims the resentencing court did not have the benefit of the trial transcript containing testimony of Nickerson's Regional Center case worker regarding his intellectual and developmental deficits. Nickerson did not make any argument below regarding the caseworker's testimony or the resentencing court's failure to consider it. This argument is thus forfeited on appeal. (*Scott, supra,* 9 Cal.4th at p. 353.) In any event, Nickerson's counsel at the resentencing hearing stated that Nickerson had a very low IQ. Nickerson's counsel also read into the record the transcript from the sentencing hearing where the trial court stated that Nickerson had a very low IQ. Further, the CDCR letter contained information about Nickerson's intellectual deficits. While the resentencing court did not reference Nickerson's intellectual capacity in its ruling, the court had no obligation to do so. "[T]he general rule is that, faced with a silent record, an appellate court will presume that the trial court performed its duty and acted in the lawful exercise of its jurisdiction." (*People v. Allegheny Casualty Co.* (2007) 41 Cal.4th 704, 715.) Nickerson concedes in his reply brief that the statute does not require the resentencing court to "recite every single consideration for and against resentencing." The resentencing court explained its rationale for denying the request to recall the sentence based on the violent nature of Nickerson's offense, his criminal history, and rule violations in prison. This was sufficient to comply with section 1172.1's directive to consider this evidence and the requirement

13

that the court "state on the record the reasons for its decision to grant or deny recall and resentencing."  (§ 1172.1, subd. (a)(7).)

While a different court may have reached another result in this case, the resentencing court's conclusion was not "arbitrary, capricious or patently absurd."  (*People v. Carmony* (2004) 33 Cal.4th 367, 378.)  Nor was its conclusion completely unsupported by the record, such that it amounted to a reversible abuse of discretion.  (*Id*. at p. 379.)

## DISPOSITION

The order declining to recall Nickerson's sentence is affirmed.

VIRAMONTES, J.

WE CONCUR:

STRATTON, P. J.

GRIMES, J.

14