Filed 5/23/24  P. v. Financial Casualty & Surety CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>FINANCIAL CASUALTY &<br>SURETY, INC.,<br><br>    Defendant and Appellant. | D082328<br><br><br><br>(Super. Ct. No. 37-2023-00017207-CU-EN-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Carolyn M. Caietti, Judge.  Dismissed.  Motion to augment the record granted.

Law Offices of John Rorabaugh and John Rorabaugh for Defendant and Appellant.

Claudia G. Silva, County Counsel and B. George Seikaly, Senior Deputy County Counsel for Plaintiff and Respondent.

Financial Casualty & Surety, Inc. (the Surety) posted a bail bond for the release of a felony defendant, whose later absence from court triggered its forfeiture.  After its motion to vacate the forfeiture was denied in the trial court, the Surety did not appeal from that order.  Rather, it now seeks to appeal from the subsequently entered summary judgment in favor of the People seeking to foreclose on the bond.

Such an appeal would be proper only if the Surety can show that in ordering forfeiture, the trial court failed to comply with the applicable statutory scheme.  Here, contrary to the Surety's argument, the forfeiture was in all respects proper.  Accordingly, we dismiss the appeal.

### FACTUAL AND PROCEDURAL BACKGROUND

Defendant Travis Oakley, a felony defendant, obtained a $250,000 bail bond from the Surety in 2020 while the court system was grappling with the early days of the COVID-19 pandemic.  On April 22, 2020, he was in custody and appeared in court via video.[1]  At that hearing Oakley agreed to waive his right to a speedy trial and explicitly authorized his counsel, attorney Grossman, to appear on his behalf for scheduling purposes under Penal Code section 977.[2]  "Trial call" was set for August 17, 2020.

On August 17, Grossman appeared alone but noted he was still authorized to appear for his client under section 977.  While this was labeled

---

[1]    The People moved to augment the record with two transcripts, from April 2020 and August 2020, that we find useful.  We grant their motion.

[2]    All further statutory references are to the Penal Code.  Section 977 allows counsel to appear on behalf of their client under certain circumstances with the defendant's explicit consent.

2

as a trial call in the court minutes,[3] it consisted only of a scheduling conversation. At that point, the courts were operational but prioritizing cases involving defendants who were still in custody. Because Oakley had posted bail in July 2020, his case had to wait. The parties agreed to calendar a status conference for January 13, 2021—at which point they hoped to proceed to trial in the near future.

Grossman again appeared on behalf of his client in January, but the superior court was still allocating its limited resources to trials for defendants in custody. Dates for those out-of-custody were being calendared in June at the time. The next date was set for June 30, 2021, and the court said Oakley should be present unless Grossman again made a section 977 appearance on his behalf.

On June 30, the situation was largely the same. The court was still dealing with a backlog of cases. Although the minute order indicated the June date would be for trial call, as had been the case in August, the parties again only discussed scheduling. Grossman appeared for Oakley, invoking section 977, and they agreed to set a trial call date for January 26. The parties also discussed setting a readiness conference, but ultimately decided to proceed to trial instead.

On January 26, 2022, Grossman appeared and notified the court that he has lost contact with his client. The judge issued a bench warrant and ordered forfeiture of the bail bond.

The Surety now argues that the court lacked jurisdiction to order forfeiture of the bond in January 2022 because it should have done so on June 30, 2021.

---

[3] Although they were not included in the record, this court obtained and on its own motion takes judicial notice of the minute orders from April 22, 2020, August 17, 2020, and January 13, 2021. (Evid. Code, § 452, subd. (d).)

## DISCUSSION

### A. *The Procedural Context for This Appeal*

The Surety purports to appeal "from the order of March 29, 2023, denying its motion to exonerate bail . . . and the summary judgment entered on April 24, 2023 . . . ." A central problem here, however, is that the court did not deny the Surety's motion to exonerate bail on March 29. That decision was made the previous November. The Surety did not appeal from the November denial, and hired new counsel who was apparently unaware of his predecessor's motion. He filed a duplicative motion in January making the same argument. On March 29, the court merely pointed this error out to the second attorney and then granted his request to take the duplicative motion off calendar. This was not a final appealable order. (*Griset v. Fair Political Practices Commission* (2001) 25 Cal.4th 688, 696–697 (*Griset*).)

The other purported basis for this appeal is the summary judgment entered against the Surety one month later, in April. Such judgments are consent judgments and are typically not appealable "except when not entered in compliance with the requirements of the applicable provisions." (*County of Los Angeles v. Fairmont Specialty Group* (2009) 173 Cal.App.4th 538, 542, fn. 2.) Here, the Surety asserts it has properly appealed from the April 2023 summary judgment. It reasons that the superior court lacked jurisdiction to order the bond forfeited in January 2022 because it should have done so roughly six months earlier in June 2021. If this reasoning is correct, the trial court failed to comply with the statutes governing bail bond forfeitures, making the summary judgment appealable. (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 663–664; *People v. Pugh* (1970) 9 Cal.App.3d 241, 243, fn. 1.)

4

Whether this theory of appealability withstands scrutiny depends on the validity of the Surety's argument that the trial court lost jurisdiction to order forfeiture of the bond when it failed to take action on June 30, 2021. If this premise is correct, the appeal is proper and the Surety is entitled to relief. If the premise fails, the summary judgment is not appealable and the purported appeal must be dismissed.

**B.** ***The Court Had Jurisdiction to Order the Bond Forfeited***

The regime governing bail bonds is statutory in nature. (*People v. Ranger Ins. Co.* (1998) 66 Cal.App.4th 1549, 1552 (*Ranger*); *People v. American Contractors Indemnity Co.* (2015) 238 Cal.App.4th 1041, 1044.) Among other strict requirements, courts must order forfeiture of a bail bond the first time a defendant does not appear without sufficient cause. (*Id.* at p. 1044; § 1305, subd. (a).) If the court fails to do this, it loses jurisdiction over the bond and cannot order it forfeited at a later date. (*People v. Safety National Casualty Corp.* (2016) 62 Cal.4th 703, 710.)

The Surety relies on this principle for its argument. It takes the position that the court lacked jurisdiction to order the bond forfeited in January 2022 because, by its account, Oakley was first obligated to personally appear in court the previous June and failed to do so. The reasoning here is somewhat opaque, but it seems to hinge on the efficacy of Oakley's section 977 waiver. Specifically, the Surety challenges the waiver as either (1) not properly executed, and therefore ineffective to excuse Oakley's absence in June, or (2) irrelevant because it could not excuse Oakley from the type of proceeding that occurred in June—namely, a "trial call." We address each of these contentions in turn.

As to the first issue, the record makes it clear that Oakley consented to allow his attorney to appear on his behalf under section 977 for calendaring

5

purposes. He stated this orally on the record in April 2020. After that, his attorney appeared briefly on his behalf three times to confer with the People and the court about when the case could reasonably proceed given the delays caused by the pandemic. At each of these appearances, Grossman stated on the record that he was appearing for his client under section 977.[4] Insofar as the Surety implies a written section 977 waiver was needed, an oral waiver on the record suffices. (§ 977, subds. (b)(2)[5]; see *People v. Velasco* (2023) 97 Cal.App.5th 663, 674.) There was nothing inherently problematic with the section 977 waiver in this case.[6] Moreover, at Grossman's second appearance, the court confirmed there was a section 977 waiver and explicitly stated it would be sufficient for Grossman to appear on Oakley's behalf in June. Given this, it would have been premature for the court to have ordered forfeiture on that date. (*Bankers, supra,* 191 Cal.App.3d 742, 747–748 ["[T]he attorney's representation that he or she is authorized to proceed in

---

[4] The Surety contends that Grossman failed to make a record he was appearing with the consent of the defendant. But the transcripts contradict this assertion. Nothing indicates Oakley's earlier consent to this arrangement changed, and absent evidence to the contrary, the court is entitled to rely on defense counsel's oral statement that he is properly appearing for the defendant. (*People v. American Bankers Ins. Co.* (1987) 191 Cal.App.3d 742, 745 (*Bankers*).)

[5] Section 977, subdivision (b)(2) says that a defendant may give their waiver in writing, but can also enter their waiver personally or through counsel with the court's consent.

[6] Because we reach this conclusion, we do not address the parties' arguments regarding whether Emergency Rule 5 would have cured a defect in the waiver. (See *E.P. v. Superior Court* (2020) 59 Cal.App.5th 52, 55–56, for a discussion of the emergency rules promulgated by the Judicial Council in response to the COVID-19 pandemic.)

the defendant's absence precludes a declaration of forfeiture unless the court specifically has ordered the defendant to personally appear."].)

The Surety further asserts that section 977 does not "excuse a defendant at a trial call hearing," citing *Ranger, supra,* 66 Cal.App.4th at page 1553. As pertinent here, *Ranger* stands for the proposition that even if a defendant is excused from a particular proceeding under section 977, his presence might nonetheless be required under section 1305. In such a case, the latter takes precedence in determining when bail must be forfeited. (*Ranger,* at pp. 1553–1555.) Within section 1305, "trial" is listed as one of the proceedings where a defendant's presence is mandated. (*Id.,* subd. (a)(1)(B).) Thus, the Surety appears to argue that the June 30, 2021 date in Oakley's case was the commencement of his "trial" within the meaning of section 1305.

Here, we find the analysis in *People v. Indiana Lumbermens Mutual Ins. Co.* (2011) 194 Cal.App.4th 45 (*Lumbermens*) particularly helpful. The surety in that case raised substantially the same argument, also relying on *Ranger*. (*Ranger, supra*, 66 Cal.App.4th 1549.) In distinguishing *Ranger*, the *Lumbermens* court explained that the *Ranger* defendant did not appear on the day his case was called for trial, and that proceedings were delayed by his absence. Rather than ordering forfeiture of the bond at that time, the court waited. It consequently lost jurisdiction to make the order two days later. (*Lumbermens,* at p. 50, discussing *Ranger*, at pp. 1553–1554.) In contrast, the proceedings in *Lumbermens* involved a preliminary hearing that was continued not because the defendant was unexpectedly absent, but because the court granted a continuance motion for an unrelated reason. (*Lumbermens,* at p. 50.) The appellate court indicated that regardless of the label attached to the scheduled proceeding, the matter was never actually called for preliminary hearing. Forfeiture of the bail bond was thus not

7

mandated by the decision in *Ranger*—and in fact, it would have been premature. (*Lumbermens, supra,* 194 Cal.App.4th at p. 51.)

The analysis in *Lumbermens* applies here as well. (*Lumbermens, supra,* 194 Cal.App.4th 45.) The label assigned to a date is not dispositive. Rather, it is the substance of the proceeding that matters. Here, although Oakley's case was nominally set for "trial call" on June 30, 2021, there was no trial call that day—only a conversation where the parties conferred about calendaring. Moreover, this was not the first "trial call" in the case. The earlier conference on August 17, 2020 was also labeled "trial call," yet even the Surety does not argue Oakley's presence was required in August, or that the bond should have been forfeited when he did not personally appear then. Looking beyond the labels, the transcripts from both August 2020 and June 2021 show these proceedings were mere status conferences with no realistic expectation that the matter would be sent out for trial.

In contrast, the parties' discussion with the court in June 2021 shows the parties were anticipating a true trial call the following January. Before setting the date, they discussed Grossman's availability for a trial given his other cases, and both the People and the defense indicated that an additional readiness conference prior to the trial date would not help resolve the case. It is clear from this discussion that both the parties and court considered the January 2022 date to be the real trial call.

Given this record, a holding that forfeiture of the bond was required in June 2021 (or even, under the Surety's logic, in August 2020) would "turn[ ] [the] requirement of strict construction on its head" by supplanting the proper date when forfeiture was actually required—which turned out to be January 26, 2022—with an earlier date where forfeiture was not statutorily mandated. (*Lumbermens, supra,* 194 Cal.App.4th at p. 51.) This would

8

encourage the entry of forfeiture orders *before* it is necessary, undermining our longstanding policy of construing the laws governing bail bonds strictly "to avoid the harsh results of a forfeiture." (*People v. Allegheny Casualty Co.* (2007) 41 Cal.4th 704, 714.) As the *Lumbermens* court explained, "The statutory scheme cannot be manipulated . . . to require forfeiture when it is not strictly called for in order to avoid forfeiture when, on a later occasion, it is strictly called for." (*Lumbermens,* at p. 51.)

In summary, there was no basis for the court to order forfeiture of the bond at the scheduling conference on June 30, 2022, a proceeding at which Grossman appeared in Oakley's absence but with his permission pursuant to section 977. The bond was appropriately forfeited six months later in January 2022 when Oakley failed to appear for trial call and Grossman reported he had lost contact with his client. As a result, summary judgment against the Surety was properly entered in April 2023, making it a consent judgment from which there is no valid appeal. The Surety's purported appeal is, therefore, dismissed. (*Griset, supra*, 25 Cal.4th at p. 696; *Jennings v. Marralle* (1994) 8 Cal.4th 121, 126.)

## DISPOSITION

The appeal is dismissed. The parties shall bear their own costs.


DATO, J.

WE CONCUR:


O'ROURKE, Acting P. J.


BUCHANAN, J.

9